CASE 83—ACTION ON CONTRACT—MAY 24.

# Louisville Bridge Company v. Louisville & Nashville R. R. Co.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. CONTRACTS—CONTRIBUTION TO BRIDGE RENTAL—DAMAGES FOR BREACH.—Appellee and other railroad companies entered into an agreement with appellant to contribute in proportion to the business done, a rental which would cover appellant's fixed charges and create a sinking fund to pay appellant's bonded indebtedness, with the further provision that the rental should be reduced in proportion to the increase of the sinking fund and the contribution which other roads might make to the aggregate rental. The other participating roads received rebates on rentals paid but the appellee did not. In an action against the appellant to recover overcharges on rentals it is held that plaintiff is entitled to a judgment to an amount of its overcharges estimated on the traffic basis; and that it was no defense to the action that the traffic reports which the appellee covenanted to make were made by its connecting lines and not by appellee itself.

2. SAME.—Plaintiff in an action for breach of contract is not precluded from recovery by failing to comply with a stipulation inserted for its own benefit and in which the other contracting parties have no interest.

HUMPHREY & DAVIE FOR THE APPELLANT.    (GIBSON, MARSHALL & GIBSON OF COUNSEL.)

1. Effect of reformed petitions upon former pleadings filed in the cause: Smith v. Pelot, 65 Hun, 631; Holmes v. Jones, 121 N. Y., 461; Mulligan v. Ill. Cent. Ry. Co., 36 Ia., 181; Brown v. Pickard, 4 Utah, 492.

2. On practical construction of a contract. Louisville Turnpike Co. v. Shadburne, 1 Ky. Law Rep., 325; Thompson v. Thompson, 2 B. M., 166; 11 Am. & Eng. Ency. of Law, 518.

3. When money can be recovered as paid by mistake.   Tyler v. Smith, 18 B. M., 797.

4. What contracts are mutual and dependent. 7 Am. & Eng. Ency. of Law, 120, 121; McLure v. Rush, 9 Dana, 65; Allen v. Saunders, 7 B. M., 592; Irwin v. Lee, 34 Ind., 321.

5. Duty of a party to minimize his damages.   1 Sutherland on Damages, 148; Miller v. Mariner's Church, 7 Greenleaf, 51.

Louisville Bridge Company v. Louisville & Nashville R. R. Co.

HELM, BRUCE & HELM FOR APPELLEE.

1. When a bridge company makes a contract with several railroad companies for the use of the bridge, and agrees that upon signing the agreement it will so fix and maintain its rates as not to produce, in the aggregate, a sum exceeding certain sums named in the contract, and that the tolls shall never be more to one railroad company than to another, it has no right to maintain its tolls at such rates as to produce an aggregate sum greater than that named in the contract, and if it does so, it comes under obligation to see to it that the surplus thus improperly created is redistributed to the railroad companies in the proportion of their several contributions to the tolls.

2. If the bridge company, after having improperly created the surplus, disposes of it by crediting back or redistributing the whole surplus to some of the companies, exclusive of another, it is as much a breach of contract as if there had been a difference made in the first instance in the tolls charged to those companies.

3. The bridge company, having consented that the Louisville & Nashville Railroad Company might pay its share of the established published toll rates to its connecting carriers, which were in turn to account to the bridge company for them, those companies became the agents of the bridge company for the purpose of those collections, and it can not escape liability in a suit upon the contract to recover the Louisville & Nashville Railroad Company's share of the surplus, by showing that the Louisville & Nashville Railroad Company had not paid directly to the bridge company, the performance of that covenant having been expressly waived.

4. Knowing that the connecting carriers of the Louisville & Nashville Railroad Company had collected from it its proportion of the full published toll rates for the use of the bridge company, and that a large surplus would be created by the exaction of the full published toll rates from all the companies, it was the duty of the bridge company to see to it that the surplus thus created should be redistributed in proportion to contributions, and then the bridge company, recognizing this obligation, actually credited on its books the Louisville & Nashville Railroad Company and debited the connecting carriers respectively, with the tolls on the traffic interchanged between them respectively and the Louisville & Nashville Railroad Company, this duty of the bridge company to collect the amounts from the connecting carriers thus debited to them and credited to the Louisville & Nashville Railroad Company, fixes an undoubted obligation on the bridge company to account to the Louisville

& Nashville Railroad Company for the amount with which it is credited on the books of the bridge company, and, if, in order to realize that money, it must first collect it from the connecting carriers, its primary duty to the Louisville & Nashville Railroad Company is not lessened thereby, the whole situation having been created in the first place by the bridge company's breach of contract in exacting excessive tolls.

5. Where the bridge company collects from some of the connecting carriers the amounts thus debted to them on account of the Louisville & Nashville Railroad Company's share of the surplus, and uses the money in its own business, it is liable to the Louisville & Nashville Railroad Company for not only the amount collected, but for interest as well on those amounts from the time they should have been paid over, and if it has disabled itself by a contract to which the Louisville & Nashville Railroad Company was not a party, from making collection from one of these companies it is nevertheless bound for the amount with interest from the time it should have collected and paid over to the Louisville & Nashville Railroad Company. Schmidt, Trustee, v. Louisville, Cincinnati & Lexington Railway Co., 95 Ky., 290.

SAME COUNSEL FOR APPELLANT IN A PETITION FOR A REHEARING.

SAME COUNSEL FOR APPELLEE IN RESPONSE TO THE PETITION FOR A RE-HEARING.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This suit was instituted by appellee against the Louisville Bridge Company, the Jeffersonville, Madison & Indianapolis Railroad Company, the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, the Ohio & Mississippi Railway Company, the Louisville, New Albany & Chicago Railway Company, and the Louisville, Evansville & St. Louis Consolidated Railway Company to recover, under a contract made on the 5th day of June, 1872, excessive tolls alleged to have been collected from it by the Louisville Bridge Company for the years 1892, 1893, 1894, and 1895. The clauses of that contract which are essential to the determination of this case are the first, second, third, fifth, and sixth, which are as follows:

"Agreement made this fifth day of June, 1872, between

the Louisville Bridge Company, party of the first part, the Jeffersonville, Madison & Indianapolis Railroad Company, party of the second part, the Ohio & Mississippi Railway Company, party of the third part, and the Louisville & Nashville Railroad Company, party of the fourth part, witnesseth:

"Whereas, the first party owns the bridge over the Ohio river at Louisville, between the Commonwealth of Kentucky and the State of Indiana, with the approach thereto on the south or Kentucky side thereof, its capital stock being fifteen hundred thousand dollars, and its mortgage debt eight hundred thousand dollars, bonds for said debt being issued, for one thousand dollars each, dated the first day of December, 1868, and payable twenty years after said date, with interest at seven per cent. per annum, payable semi-annually in gold on the first day of June and the first day of December, principal and interest payable at the Bank of America, New York City; and whereas, the second party owns the approach to said bridge on the north or Indiana side thereof, and the railroad connecting therewith; and whereas, the third party owns a railroad connecting with the railroad of the party of the second part at or near the north end of said approach; and whereas, the party of the fourth part owns a railroad terminating in the city of Louisville and connecting with the track over and across the said bridge. Now, this agreement witnesseth, in consideration that the second, third, and fourth parties agree respectively to use said bridge as hereinafter covenanted, the first party hereby covenants and agrees jointly and severally with the second, third, and fourth parties, their successors and assigns, respectively, that the tolls and charges over and for the use of said bridge and its tracks owned by the first party, in the transportation of

freights, passengers, mails, and other goods received from or delivered to the roads of said second, third, and fourth parties, per ton, and per passenger, or per car, engine, or other means of transfer, over said bridge, shall be fixed on signing this agreement, and shall not be in excess of a toll or charge sufficient to produce in the aggregate a sum equal to the cost and expense of keeping in repair and taking care of said bridge and the said approach owned by the first party, paying a dividend semi-annually of six per cent. on said capital stock of fifteen hundred thousand dollars, the interest upon said bonds as the same matures and becomes payable, a sinking fund sufficient to pay off said bonds of eight hundred thousand dollars at maturity, the amount necessary to keep up the corporate organization of the party of the first part, with its proper officers and servants, and such taxes as may be chargeable against such bridge company on said bridge or other property pertaining thereto or otherwise; and it is understood and mutually agreed that the said charges and tolls shall from year to year be reduced in proportion to the reduction of interest on said bonds by the operation of said sinking fund, and that said toll and charges shall always be the same to each of the second, third, and fourth parties, and that the tolls and charges to other railroads or railroad companies for like use of said bridge and the approach owned by the first party shall not be less than those charged to or incurred by the parties hereto. And all such tolls and charges paid by other railroads or railroad companies shall be applied to and form a part of the fund hereinbefore provided for the payment of expenses, sinking fund, interest, dividends, and taxes, the same as if paid by the second, third, and fourth parties.

"Sec. 2. The first party shall keep in repair, maintain,

and renew such bridge and its appurtenances and the tracks and approach thereto, owned by the first party. If, however, said bridge or its appurtenances shall be injured by flood, ice, or other casualty, or by crystallization of the iron or other inherent decay, so as to render the same useless or dangerous, and it shall become necessary to rebuild the whole or any material part thereof, involving an expenditure greater than could be realized from a judicious amount of current rates and charges, then and in every such case it is mutually agreed between the parties that the first party shall issue bonds secured by mortgage on said bridge and its appurtenances and appendages owned by the first party, at a rate of interest not exceeding seven per cent. per annum in gold, payable semi-annually, principal payable in forty years, and to an amount sufficient to yield a fund equal to the expenses of renewing and repairing said bridge; and the proceeds of said bonds shall be applied to that purpose, in which event the tolls and charges for the use of said bridge, as hereinbefore provided, shall be increased so as to cover and provide for the payment of the interest on said bonds, and a sinking fund to retire and take up said bonds at maturity.

"Sec. 3. In consideration of the premises, the second and third parties each severally covenant for itself, its successors and assigns, with the first party, its successors and assigns, that it will pass over the said bridge all the freight, passengers, mails, express matter, and other goods carried on and over their roads to and from Louisville, and to and from points which require their passage over the Ohio river at or near Louisville during the existence of this agreement, and will pay punctually to the party of the first part the tolls and charges hereinbefore provided for the use by them, respectively, of said bridge, and the tracks

and approaches thereto, owned by the first party; and the party of the fourth part for itself, its successors and assigns, covenants with each of the parties of the first, second, and third parts, their respective successors and assigns, that it will deliver to the said party of the first part, to be passed over the said bridge, or to the parties of the second part or third part, or to such other railroad company or companies as may for the time being be transporting freight, passengers, mails, express matter, and other goods over the said bridge, all the freight, passengers, mails, express matter, and other goods carried on and over its road or any part thereof, destined for Jeffersonville, in the State of Indiana, or any other points which require their passage over the Ohio river at or near Louisville during the existence of this agreement, and will charge on said traffic, in addition to its rates for transportation service, the then established rates of toll and charges hereinbefore provided for the use of said bridge and approaches, and punctually pay the said tolls and charges to the first party."

"Sec. 5. Accounts of all expenditures, tolls, and charges and payments required by the terms of this agreement shall be kept by the party authorized by this agreement to charge the same against either of the parties hereto, the account of tolls, however, to be kept by the respective parties chargeable therewith; and all such accounts shall be rendered to the proper parties during the month next succeeding the accruing of the items thereof, and the same shall be settled and paid within thirty days after the rendition of each monthly account.

"Sec. 6. If it is found, during the month of May or November in any year, that the tolls and charges herein provided are not sufficient to meet the said interest and divi-

dend due the first day of the next succeeding month, the
parties of the second and third parts each covenant and
agree separately with the first party, and mutually cove-
nant each with the other, to advance and pay the deficit
immediately and pro rata according to the aggregate
amount of tolls and charges for the use of said bridge
against each for the current six months. The said ad-
vance, with interest thereon at the rate of seven per cent.
per annum, shall be refunded by the first party out of tolls
first thereafter accruing."

Under this contract the bridge company was authorized
to fix such rates and charges for the use of the bridge as
should produce in the aggregate not more than a sum suffi-
cient to pay (1) the cost and expense of keeping the bridge
and its approaches in repair; (2) a semi-annual dividend of
6 per cent. on the capital stock of $1,500,000; (3) the inter-
est upon the bonds of the company, amounting in the ag-
gregate to $800,000, and establishing a sinking fund suffi-
cient to pay off the bonds at maturity; (4) the amount nec-
essary to keep up the corporate organization of the compa-
ny; (5) such taxes as may be charged against the company
or its property. It was expressly agreed that these tolls
and charges should be reduced from year to year as the
outstanding bonds were paid off and discharged, and the
interest charge thereby extinguished; that these tolls and
charges should always be the same to the second, third,
and fourth parties, and that the tolls and charges to other
railroads for the like use of the bridge and its approach
should not be less than those charged to the parties to the
contract, and that all such tolls and charges paid by other
railroad companies should form a part of the fund pro-
vided for the payment of the expenses, sinking fund, inter-
est, dividends, and taxes, the same as if paid by the sec-

ond, third, and fourth parties; and in consideration of this
agreement the railroad companies agreed to pass over the
bridge all the freight, passengers, mails, express matter
and other goods carried on and over their road to and
from Louisville, and to and from points which required
their passage over the Ohio river at or near Louisville,
during the existence of the agreement, and to punctually
pay to the party of the first part the tolls and charges due
by them for the use of the bridge, tracks, and approaches
thereto.

On the first day of February, 1882, the bridge com-
pany entered into an agreement with the Louisville,
New Albany & Chicago Railroad Company for the use of
the bridge, which was substantially in accord with the
agreement between the original contracting parties, and
subsequently a similar contract was entered into with the
Louisville, Evansville & St. Louis Consolidated Railroad
Company for the use of the bridge.

Plaintiff alleges that it had lived up to the letter and
spirit of its agreement continuously from the execution
of the contract until the institution of this suit, and had
delivered to the bridge company and to the several railroad
companies using said bridge all passengers, freight, mail
and express matter to be passed over said bridge carried
on and over its road, or any part thereof, destined for any
points which required their passage over the Ohio river
at or near Louisville; that with the consent of the bridge
company and the other railroad companies using the bridge
it had, up to the filing of this suit, punctually paid for the
use of the bridge, paying to the defendant railroad com-
panies the tolls due from it on traffic passing over the
bridge hauled by plaintiff, and delivered to the bridge com-
pany or to the respective railway companies; that its con-

tributions and tolls at some times had been only such parts thereof as its mileage bore to the total mileage over which the traffic was transported, but at other times it had contributed the total amount thereof. Plaintiff charges that the bridge company, upon the signing of the contract, fixed its tolls and charges, and had from time to time changed same, but had, in violation of its contract, for the years 1892, 1893, and 1894, maintained said tolls and charges at such rates as to produce a sum more than sufficient to raise the sums mentioned and declared in the contract, and had illegally refunded the whole of this excessive toll to the defendant railroad companies, and had refused to pay any part thereof to plaintiff; and that of this excess so illegally collected from the plaintiff the Pittsburg, Cincinnati, Chicago & St. Louis had received $76,878.92, Baltimore & Ohio Southwestern Railway Company $12,488.82, Louisville, Evansville & St. Louis Consolidated Railway Company $43,968.70, Louisville, New Albany & Chicago Railway Company $34,697—making the aggregate $168,033.44—for which it seeks to hold the bridge company responsible.

The bridge company denies that plaintiff had paid to it directly any tolls on the traffic sent by it over the bridge for the years 1892, 1893 and 1894, or that it had received such tolls and charges as if paid to it by the plaintiff; and alleges that plaintiff had refused to make any reports of such traffic prior to the year 1892, and had since that time failed to pay to them the tolls due on traffic sent by it over the bridge, but had permitted this traffic to be reported by the connecting lines to whom it was delivered, who paid the tolls thereon without informing defendant what proportion thereof had been contributed by plaintiff. Defendant admits that it had maintained its tolls at a high-

er rate than was necessary to pay the fixed charges pro-
vided by the contract, but alleges that this was done with
the assent of all the parties to the contract, and avers that
plaintiff would have received its proportion of this excess
if it had furnished the necessary information to enable de-
fendant to ascertain what this proportion was as pro-
vided by the contract.

It appears that the business between the bridge company
and the railroad companies was conducted in accordance
with the agreement up until about the year 1879 or 1880,
the surplus tolls being applied, in accordance with the
terms of the contract, to the extinguishment of the bonded
debt of $800,000; that, after this was done, representatives
of the bridge company and of the railroads north of the
river held a meeting, of which plaintiff was not ad-
vised, and agreed that the bridge company should main-
tain its rates and charges at the excessive amounts, and
that the surplus created by these excessive rates should
be rebated back to the roads north of the river; and that
from that time on large amounts were each year credited
back to the roads on the north of the river.   The effect of
this, of course, was to deprive plaintiff of large sums of
money to which it was entitled under that provision of the
contract which declared that the tolls and charges should
always be the same to each of the contracting railroads.
The testimony shows that the contract was forgotten or
overlooked by plaintiff company until about the year 1888,
when plaintiff began to make demands for its proportion
of the surplus earnings, and to insist upon a reduction of
the tolls to a point where they would yield only a sum
sufficient to pay the amounts provided by the contract.
The negotiations which followed these demands on the
part of plaintiff culminated in a meeting between the par-

ties in January, 1892, in which plaintiff's contention was admitted by the Pittsburgh, Cincinnati, Chicago & St. Louis, and subsequently by the Baltimore & Ohio Southwestern Railway Company and the Louisville, Evansville & St. Louis Consolidated Railway Company, who thereafter paid to the bridge company the various sums of money which had been previously credited to them by the bridge company, and which, under the contract, was due to plaintiff; but the Louisville, New Albany & Chicago Railway Company refused to pay back the proportion of this excess which had been credited by the bridge company to it upon several grounds: First, they insisted that plaintiff was not entitled to share in these excessive tolls at all; second, that, if they were, they had not been apportioned upon the proper basis; and, third, that by a contract made by them with the bridge company subsequently to the date of the original contract the bridge company had agreed to charge them a lump sum, which was not to exceed $5,000 per month for the use of the bridge during a considerable period of time in lieu of the tolls originally agreed to be paid, and which, under the contract made with plaintiff, the bridge company was bound to collect. The testimony shows that by reason of this agreement, and the failure of the bridge company to require the Monon to pay its tolls promptly, they had fallen behind in tolls due the bridge company in a very large amount.

The evidence of the secretary of the bridge company shows that beginning with the first day of January, 1892, a full account of the tolls paid by each railroad company was kept by the bridge company from information furnished by the railway companies, and at the end of each quarter of a year thereafter the bridge company issued quarterly reports showing the total amounts of tolls so col-

lected, by whom they were paid, and the amount of the surplus, and the proportion due to each company from this excess. These reports indicate that plaintiff is entitled to the precise amount of money sued for in this action, provided the apportionment of the excess is made among the railway companies in the same proportion in which the tolls were paid by each of them to the bridge company.

Originally there was a difference in gauge between the tracks of plaintiff and the other companies, and for this reason, and with consent of all the parties, plaintiff reported its traffic to the connecting lines, and at the same time paid to them its proportion of the tolls due the bridge company, and each of them in turn reported and paid the tolls to the bridge company. It does not seem to us to be important that the freight contributed by plaintiff was delivered to connecting lines, who paid the tolls thereon to the bridge company, and this fact can not effect the right of plaintiff to recover this excessive toll which the bridge company had exacted in violation of their contract, as it appears that at least for the period covered by this suit the bridge company had as accurate information on this point as though it had been directly furnished by plaintiff.

It was the duty of the bridge company, under its undertaking with plaintiff and the other railroad companies, to make its charges uniform, and to collect its tolls. If it has failed to do so, the loss occasioned by such default should fall upon it, and not upon innocent parties. Its contract expressly required that all tolls and charges to other railroad companies for the use of the bridge and its approach should be the same as those charged to and incurred by the railroad companies who were parties to the contract; and that all such tolls paid by other railroad

companies which should afterwards use the bridge would become a part of the common fund for the payment of the fixed charges to which it was entitled under the contract.

The defendant also complains that plaintiff failed to collect the bridge tolls in excess of its transportation charges.

The testimony shows that plaintiff was forced by competition to abandon this extra charge, in order to do business. This provision was inserted for the benefit of the plaintiff, and its omission was not in any wise prejudicial to defendant, and is a matter about which defendant has no right to complain, as it is evident that they lost nothing by such omission, but, on the contrary, were greatly benefitted by the receipt of business which would otherwise not have passed over the bridge.

The dominant idea which runs through the entire contract originally entered into between the parties was that there should be absolute equality in charges made agains' the railroad companies for the use of the bridge, and that these charges should be limited, as far as practicable, to such rates as would produce a sum sufficient to pay off the fixed charges provided for in the contract; and it seems to us that there can be no reasonable doubt of the soundness of appellee's contention that, as the bridge company kept its tolls at an excessive rate, and in this way illegally accumulated a surplus, it belonged to the railroad companies in the exact proportion in which it had been paid by them to the bridge company, and each of them is entitled to have this excess paid back in exactly the same proportion in which it was paid.

It was the plain duty of the defendant bridge company to have restricted its charges to such rates as would have produced a sum of money sufficient to pay its legiti-

mate charges under the contract; and as it has violated this contract, and collected from plaintiff tolls in excess of the amount authorized by the contract, it is liable therefor, with interest from the date of such illegal exactions, at least from the time it had accurate and distinct information of the amount due plaintiff from this excess.

As the judgment rendered in this case is in accordance with the views expressed in this opinion, it is affirmed.

---

CASE 84—ENTRY OF JUDGMENT *NUNC PRO TUNC*—MAY 25.