CASE 71.—ACTION BY JOHN L. DODD AND OTHERS AGAINST THE PITTSBURG, CINCINNATI, CHICAGO & ST. LOUIS RAILROAD CO. AND OTHERS.—January 14.

# Dodd, &c., v. Pittsburg, C., C., & St. L. Ry. Co., &c.

Appeal from Jefferson Circuit Court; Chancery Branch; First Division.

SHACKELFORD MILLER, Judge.

Judgment for defendants, plaintiffs appeal— Reversed.

1. Corporations—Misappropriation of Corporate Earnings—Recovery at Suit of Minority Stockholders—Attorney's Fees Paid by Corporation.—In a suit by minority stockholders of a corporation against a railroad company for its wrongful appropriation of the assets and earnings of the corporation, resulting in another railroad company recovering judgment against the corporation, attorney's fees paid by the corporation in defense of the action resulting in the judgment are not recoverable as a part of the costs.

2. Same—Nature of Liability for Loss.—A bridge company con-

tracted with several northern railroads and one southern road for the the use by them of its bridge on payment of equal charges sufficient to provide ror annual dividends and a sinking fund. One of the northern roads, by virtue of its control of the bridge company, required the latter to pay rebates to northern roads, to the exclusion of the southern road, which afterwards recovered judgment aganst the bridge company for its proportion of the rebates. Held, That the loss suffered by the bridge company was a tort committed against it by the railroad company controllng it, rendering the railroad company liable for the entire loss at the suit of the minority stockholders of the bridge company.

3. Judgment—Res Judicata—Matters Concluded—Nature of Cause of Action.—A decision in an action by minority stockholders of a corporaton to compel defendant to satisfy a judgment against the corporation in an action on a contract, which denies relief, is not conclusive on the right of the minority stockholders to compel defendant to satisfy a judgment against the corporation for a tort.

4. Appeal and Error—Failure to Present Question Below—Departure in Pleading.—Where, in a suit by minority stockholders of a corporation to compel defendant to pay a judgment rendered against the corporation, the reply, on which issue was joined, advanced the theory of a right of recovery for fraud committed by defendant, and the matter was litigated on that issue, defendant could not on appeal defeat a recovery on the ground that the theory of fraud was a departure and could not, under the circumstances, be made the foundation of the action.

5. Pleading—Reply—Defensive Matter.—Where, in a suit by minority stockholders of a corporation to compel defendant to satisfy a judgment against the corporation, defendant relied on a decision of the court denying relief to the stockholders, demanding that defendant should satisfy another judgment against the corporation in an action on a contrac., a reply advancing the theory that the ground of recovery was based on a tort committed by defendant, was available under Civil Code Prac., section 101, authorizing a pleading of equitable matter, of avoidance or estoppel, etc.

6. Corporations—Misappropriation of Corporate Funds—Actions by Minority Stockholders.—A railroad company owned a majority of the stock of a bridge company and of defendant, another railroad company. The bridge company contracted with defendant and other railroads for the use by them of

its bridge. The principal officers of defendant were the officers of the bridge company, and by reason of such control the earnings of the bridge company were wrongfully divided for the benefit of defendant. Held, That defendant, in a suit by minority stockholders of the bridge company, must pay the loss sustained, and the railroad company controlling defendant, having received no benefit from the wrongful division of the earnings, was not liable.

7. Same.—A bridge company contracted with railroads for the use by them of its bridge on payment of equal charges sufficient to provide for annual dividends and a sinking fund. One of the contracting railroads, by virtue of its control of the bridge company wrongfully divided the surplus earnings of the bridge company to the exclusion of another contracting railroad, which afterwards recovered judgment against the bridge company for its share of the earnings so appropriated. Held, That the railroad company misappropriating the funds could not defeat a recovery of the loss sustained, at the suit of the minority stockholders of the bridge company, on the theory that the division of earnings was intra vires and made to carry out a bona fide scheme to conserve the interest of the bridge company from competition.

8. Limitation of Actions—Accrual of Cause of Action.—The right of minority stockholders of a corporation to compel defendant, controlling it, to satisfy a judgment obtained against it, based on the fraudulent division by defendant of the surplus earnings of the corporation, accrues when the corporation is compelled to pay the judgment, and not when the wrongful division of the earnings was made; a juncture of wrong and damage giving rise to a cause of action.

KOHN, BAIRD, SLOSS & KOHN, W. O. HARRIS and J. C. DODD for appellants.

HELM, BRUCE & HELM and LAURENCE MAXWELL for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

Appellants were the plaintiffs in the circuit court, and the present appeal is from a judgment of the Jefferson circuit court, rendered January 7, 1905, dis-

missing the ninth paragraph of the amended petition, filed October 15, 1903, and supplemented and extended by amendments of February 25, 1904, and October 20, 1904. Many of the questions involved have been settled by this court in a previous appeal in this same case, reported in 115 Ky. 176, 24 Ky. Law Rep. 2058, 72 S. W. 822, 74 S. W. 1096, under the title "Pittsburg, C., C. & St. L. Ry. Co. et al. v. Dodd et al.," and we shall not in this opinion go over what was there decided.

After the case was returned to the trial court the plaintiffs amended the ninth paragraph of their previous pleading, filed October 15, 1903, and the present appeal deals exclusively with the ninth paragraph and its amendments and the proceedings thereon. In that paragraph it was alleged in substance that on March 11, 1902, a judgment was rendered against the Louisville Bridge Company, in favor of the Louisville & Nashville Railroad Company, for certain rebates of tolls, accruing during the years, 1888, 1889, 1890, and 1891, amounting, with interest computed down to March 11, 1902, to the sum of $259,280.61 and costs; that, shorn of interest, the principal covered in the judgment was $150,775.88. The paragraph then proceeds with other allegations in general to the effect that the judgment so recovered had not yet been paid, but that the defendant Pittsburg, Cincinnati, Chicago & St. Louis Railway Company was endeavoring to cast the burden of the judgment upon the bridge company, with a prayer that the bridge company and defendant be required to make immediate demand upon the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company to pay, and that that company be required to pay into the treasury of the bridge company a sufficient amount to

satisfy the said judgment. On December 12, 1903, the parties to this litigation entered into a written agreement, settling all of their differences, but expressly reserving to the plaintiffs and for further litigation any loss to which the bridge company might be subjected by virtue of the matters set forth in the ninth paragraph above referred to, growing out of the judgment which the Louisville & Nashville Railroad Company had recovered against the bridge company for the rebate of tolls in the years aforesaid. The manner of the rebating of these tolls is fully set forth and explained in the opinion of this court in 115 Ky. 176, supra.

By an amended pleading filed by the plaintiffs on February 25, 1904, this agreement of December 12, 1903, is in general terms set out, and it is further there alleged that the defendant Pittsburg, Cincinnati, Chicago & St. Louis Railway Company paid only a part of the judgment recovered against the bridge company, leaving unpaid and casting as a loss upon the bridge company a certain portion which the bridge company was required to pay, and which amounted on the date of payment, to wit, January 11, 1904, to the sum of $144,328.28. In general terms it is alleged that this amount, which the bridge company was required to pay, was the result of a wrongful appropriation of the assets and earnings of the bridge company by the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and that during the time these rebates were being made, for which the judgment of the Louisville & Nashville Railroad Company was recovered, the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company had derived a profit of $304.412.95. By stipulation of the parties it is agreed that these amounts are correct. The pleading of

February 25, 1904, prays judgment against the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company for the sum of $144,329.28, with interest thereon at the rate of 6 per cent. per annum from January 11, 1904, and costs. The amended pleading of date October 29, 1904, refers to a matter of attorney's fees paid by the bridge company in defense of the suit of the Louisville & Nashville Railroad Company, which resulted in the judgment above referred to; and as the court is of the opinion that the attorney's fees cannot be recovered as a part of the costs, it will not be necessary here to consider that pleading. See Gaar v. Louisville Banking Co., 74 Ky. (11 Bush) 180, 21 Am. Rep. 209.

The Louisville & Nashville Railroad Company recovered another judgment against the Louisville Bridge Company for its proportion of the rebates of tolls for the year 1892, 1893, 1894, and 1895, which was before this court in 106 Ky. 674, 25 Ky. Law Rep. 405, 51 S. W. 185. On the previous appeal in this case (115 Ky. 176, supra, the plaintiffs sought to recover against the appellee for the loss sustained in the payment of this judgment; but that contention was denied in the judgment of this court in 115 Ky. 176, supra. It is contended by appellees that the principle of that judgment enforces a decision against the contention of the appellants made here, even if it be not a foreclosure of the contention under the principles of res judicata. The contention of the appellants is that the loss which they desire in this proceeding to restore to the bridge company grows out of a tort of the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, while there was no feature of tort so far as the bridge company was concerned in the judgment recovered by the Louis-

ville & Nashville Railroad Company in the case decided in 106 Ky. 674, supra, and for which a recoupment was denied in 115 Ky. 176, supra, and that, therefore, they are not estopped, either by the principles of res judicata or precedent of the former case. Both parties seriously contend for and against the claim on the ground of tort as an original proposition, and this requires a short statement of the main features of the case.

While a vast quantity of evidence has been introduced and the record is exceptionally large, the facts which control the question at bar are few and not disputed. The dispute attaches mainly to the deductions drawn from the admitted facts. It appears that the Louisville Bridge Company was organized with a capital of $1,500,000, all of which was paid in, and that this, together with $800,000 borrowed on an issue of bonds secured by mortgage, constructed and equipped the bridge, which was open for traffic on February 12, 1870. On its total capital, consisting of 15,000 shares, the Pennsylvania Railroad owns and has owned, at least since 1880, as agreed by the parties, 9,006 shares, giving it a control in stockholders' meeting; and it further appears from the stipulation that the Pennsylvania Railroad owns all of the stock of the Pennsylvania Company, and it is not disputed that the Pennsylvania Company manages all of the railroad interests of the Pennsylvania Railroad west of Pittsburg, and that in turn the Pennsylvania Company owned and controlled the Jeffersonville, Madison & Indianapolis Railway, which, with other railroads, in the year 1890 was consolidated into the appellee Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and that by this consolidation the Pittsburg, Cincinnati, Chicago & St.

Louis Railway Company assumed all of the obligations of the Jeffersonville, Madison & Indianapolis Railroad Company, and it is stipulated that the Pennsylvania Railroad Company owns, and has always owned since the consolidation, 57 per cent. of the stock of the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company. It appears that on June 5, 1872, the Louisville Bridge Company, together with the Louisville & Nashville Railroad Company, which was the only railroad approaching the bridge, which spans the Ohio river at Louisville, from the south, and the Jeffersonville, Madison & Indianapolis Railroad, and the Ohio & Mississippi Railroad, then the only railroads approaching it from the north, entered into a written contract which is set forth in full on the former appeal of the case in 115 Ky. 176, supra. It is not necessary again to set forth the contract here. The general plan of that contract was to keep up merely the corporate organization of the bridge company, and to pay its operating expenses and taxes, and to provide a sinking fund to retire its indebtedness of $800,000 at its maturity in 1888, and to pay a semiannual dividend to its stockholders. The railroads assumed the management and control of its property and while the contract provided that the tolls should be fixed at a sum sufficient in the aggregate to raise a sum sufficient to meet the fixed charges, this provision was very soon breached. From the beginning the railroads in effect fixed the tolls.

During the first years of operation under the contract all of the surplus earnings were paid over to the sinking fund to retire the bonded indebtedness. In 1875 the Ohio & Mississippi Railroad Company, through its president, complained that the tolls were excessively high, and that, unless reduced, it would

vol. 127—49

retire from the contract, under a clause which per-mitted this upon two years' notice. It seems, how-ever, that nothing was done under this threat, but that in the latter part of 1880, or the first part of 1881, a meeting was held at which the bridge company, the Ohio & Mississippi Railroad Company, and the Jeffersonville, Madison & Indianapolis Railroad Company were represented. At this meeting it was agreed that the tolls should not be reduced, but that the contribution to the sinking fund of the bridge company should be reduced, and, instead of paying over all of the surplus earnings, they should pay over only an amount of $36,500 per annum, which was calculated to be a sufficient contribution to retire the bonds at their maturity in 1888, and this sum did subsequently retire the bonds and leave a small surplus. At that meeting it was further agreed that all of the earnings of the bridge company, and it appears that it had certain terminal properties which it rented and probably other sources of income, should be turned over to a common fund, and that after the payment of the fixed charges the balance should be divided among the Northern roads in the proportion of the traffic furnished by them respectively. It appears that the Louisville & Nashville Railroad Company was not invited to this conference, and had no part in it, and was never apprised of it, but, on the contrary, that this arrangement was concealed from the Louisville & Nashville Railroad Company until about the year 1888.

At the time of this agreement, in 1880 or 1881, it appears from the agreed stipulation that the Pennsylvania Railroad Company, then acting in its stockholding interest in the bridge company, elected three out of five of the members of the board of directors

of the Louisville Bridge Company, and at that time and thereafter actually elected as its representatives on that board the first, second, and third vice presidents of the Pennsylvania lines west of Pittsburg, and that during the whole time of the present controversy these officers were elected without reference to their individual personality, but wholly by virtue of the fact that they occupied these respective positions in the Pennsylvania interest. It further appears that at none of the times in controversy did any of these officers thus elected in the Pennsylvania interest have any stock in the bridge company, and none of them was paid any salary by the bridge company, but all received their entire compensation from the other Pennsylvania interests. It further appears from the evidence that the meetings of the stockholders of the bridge company were merely perfunctory, and that in fact its whole directory was elected by the stock of the Pennsylvania Railroad, and that the meetings of the board of directors were few and far between. Under these circumstances the agreement to keep the tolls of the bridge company at a rate in excess of the contract and to divide the surplus between the two railroads which came to it from the north, was made, and a letter of instructions was written by an officer of the Pennsylvania Company to the accounting officer of the bridge company, giving him a form for keeping the accounts and for the division of this surplus, and expressly excluding from participation the Louisville & Nashville Railroad Company. Under this arrangement the tolls were maintained far in excess of raising an amount equal to pay the fixed charges provided for in the contract of June 5, 1872, and the surplus was

divided among the Northern railroads from the year 1880 down to and including the year 1891.

Shortly after the agreement was made the Louisville, Evansville & St. Louis Railroad Company, called the "St. Louis Air Line," and the Louisville, New Albany & Chicago Railway Company, called the "Monon," were incorporated, and were permitted to participate in the surplus of the bridge company. Both of these latter railroads, the "Air Line" and the "Monon," as well as the Ohio & Mississippi Railway Company, failed and went into the hands of a receiver before the initiation of any of the litigation here concerned. It is stipulated that during the years 1881 to 1891, both inclusive, there was rebated out of the surplus earnings of the bridge company to the appellee and its predecessor, whose obligations it assumed, the sum of $900,787.02, and that for the years 1888 to 1891, both inclusive, there was rebated to the appellee and its predecessor, out of these surplus earnings, the sum of $304,412.95. These amounts, by stipulation, are agreed to be so much profit to the appellee and its predecessor out of the surplus earnings of the bridge company, which were accumulated in breach of the contract between the railroads and the bridge company. In this division of the surplus earnings among the Northern railroads the Louisville & Nashville Railroad Company was entirely ignored and the distribution was concealed from it, and in this way that proportion of the surplus earnings which were exacted from the traffic furnished by it in violation of the contract of June 5, 1872, was divided among the Northern railroads; and it was to recover this wrongful exaction that the Louisville & Nashville Railroad Company instituted two actions against the Louisville Bridge Company in

the year 1892. It (the Louisville & Nashville Railroad Company) discovered somewhere in the year 1888 that it was being discriminated against under the contract of June 5, 1872, and that the discriminatory tolls exacted upon its traffic crossing the bridge were being divided wholly among the Northern railroads. An inquiry was set afoot which resulted in a meeting of the railroads patronizing the bridge at Cincinnati, by virtue of which it was agreed that, beginning with January 1, 1902, the railroads on the north would pay to the bridge company the proportion of the surplus tolls which belonged to the Louisville & Nashville Company, if it was finally adjudged to be entitled under the contract of June 5, 1872. to participate in the surplus. The "Monon" alone disagreed to this arrangement and defaulted in the payment of any tolls, which brought about a loss which was adjudged on the former appeal in 115 Ky. 176, supra. Likewise the "Air Line," while entering into the agreement, defaulted in the payment of a small amount of tolls, which was adjudged on the previous appeal; but none of these defaults has any bearing upon the question now before the court.

The manner in which these rebates were conducted, in short, was this: The Louisville & Nashville Railroad Company, from the making of the contract and during the entire period covered by this litigation, received its interchange of traffic from, and delivered its interchange of traffic to, the Northern railroads, and permitted the Northern railroads to keep the accounts. The bridge company never for itself kept an account of the traffic that passed over its bridge, but received its account from the railroads, and in this way the accounts of its entire traffic were furnished to it by the Northern railroads in one account,

which did not, prior to 1892, separate the Louisville & Nashville traffic delivered to the Northern roads from the traffic of the Northern roads delivered to the Louisville & Nashville, and thus the entire traffic down to 1892, in the information furnished the bridge company, appeared to be the traffic exclusively of the Northern railroads. Quarterly the bridge company, from its own data of expenses and the traffic furnished it by the Northern railroads, would deliver to the railroads a statement showing the gross traffic and the fixed charges to be paid under the operating contract, and upon these statements so furnished the railroads would at intervals furnish to the bridge company the funds necessary to meet its fixed charges, withholding the balance, and the amounts thus retained are what in this opinion and in the record are denoted "rebates." In this way, the wrongful exactions by surplus tolls from the traffic furnished by the Louisville & Nashville were divided among the Northern railroads, and this continued down to and including the year 1891; but thereafter, and beginning with the year 1892, under the agreement made at Cincinnati by the appellee and its associates, the Northern railroads, in their quarterly statements to the bridge company, stated the amount of traffic that was furnished by the Louisville & Nashville, and in their remittances remitted to the bridge company the proportion of the surplus which belonged to it, save and except the "Air Line" and "Monon," which defaulted in the payment of all tolls. In this way, and from 1892 to 1895, both inclusive, the appellee regularly in periodical installments paid to the bridge company under this new agreement the proportion of the rebates which belonged to the Louisville & Nashville. These rebates were used by the bridge com-

pany·in meeting the deficit, in dividends and other
fixed charges, caused by the failure of the "Air Line"
and "Monon" to pay any tolls, as set forth in the
former appeal in 115 Ky. 176, supra.   In 1896, in-
stead of a surplus, there was a deficit in the earnings
of the bridge company, and this deficit brought about
a default in the dividends, which in turn aroused the
stockholders, and thus brought about the present lit-
igation, which was instituted in September, 1897.

The Louisville & Nashville Railroad Company had
accurate knowledge of its proportion of the rebates
from the years 1892 to 1895, inclusive, which were
furnished to it under the agreement above referred
to; but for the years prior to 1892 it had no such in-
formation, though it knew it had been excluded from
participation.   To obtain this information for the
years prior to 1892 would require a great deal of work
in the examination of waybills and original docu-
ments in its archives, and, as stated by its counsel, it
was fearful whether or not a compilation of sufficient
proof could be thus made.   To circumvent these diffi-
culties, in the year 1892 it filed two suits against the
bridge company to recover the proportion of the sur-
plus earnings of which it had been deprived.   In one
suit it sought to recover its proportion of these earn-
ings from the year 1880 down to and including the
year 1891; and in the other suit it sought to recover
its proportion of these earnings from the years 1892
to 1895, both inclusive.   Both suits were based upon
an alleged breach by the bridge company of the .con-
tract of June 5, 1872, in that the tolls had been main-
tained at a rate in excess of that which would merely
meet the obligations of the contract, and in this way
a surplus had been accumulated and divided, to its
exclusion.   It pressed to a speedy judgment the suit

brought to recover for the years 1892 to 1895, inclusive, and withheld a prosecution of the suit for anterior years until it had recovered judgment for the latter years. The result of the prosecution for the latter years—that is, for the years 1892 to 1895, both inclusive—was a judgment in its favor on the 27th day of June, 1896, against the Louisville Bridge Company. At the time of the filing of the original petition in the present suit this judgment had been recovered; but at the instance of the railroads, as set forth in the previous appeal (115 Ky. 176, supra), was still in process of litigation; but the suit to recover for the years anterior to 1892 had not, at the filing of the petition in the present litigation, been prosecuted to a final judgment.

The original petition in the case at bar sought to recover by way of indemnity on behalf of the bridge company whatever amount might be ultimately adjudged against it in favor of the Louisville & Nashville Railroad Company by virtue of the suit involving the years 1892 to 1895, both inclusive, and referred to the suit for the anterior years as a merely pending matter. It was then a question whether there would be any recovery against the bridge company for these years prior to 1892. The allegations in the pleadings in a general way referred to the accumulation and division of all of these surplus earnings as a wrong committed by the appellee and its predecessor upon the bridge company, and the issues joined on the original pleadings are sufficient for a recovery in tort. At the time of the previous appeal in 115 Ky. 176, supra, the judgment of the Louisville & Nashville for the years from 1892 to 1895, both inclusive have been affirmed by this court in 106 Ky. 674, supra, and had been paid off. It appeared from the evidence,

the agreed facts, and the presentation of the case on that appeal, that the stockholders in the right of the bridge company were seeking to recover from the appellee the full amount of the loss suffered in contractual dividends by the payment of the judgment as an operating expense under the contract of June 5, 1872. The contention then was that under the contract the contracting railroads were liable for the operating expenses and the dividend jointly and severally, and that this loss was an operating loss, and therefore to be recovered against one or all of the contracting railroads. This court did not take this view, and in the opinion in 115 Ky. 176, supra, it was held that as the deficit in dividends had come from an application to operating expenses and other obligations under the contract of June 5, 1872, of the amounts paid to it in the office of a stakeholder, for the purpose of the then pending suit of the Louisville & Nashville Railroad Company, the loss was not an operating charge, but was an independent loss of the bridge company, to fall upon its dividends or capital. The matter could not have been otherwise adjudged, as the appellee in regard to the matter then before the court had committed no wrong either in the accumulation or division of surplus earnings. It had agreed to and actually paid periodically its whole contribution as called by the contract, and that the only misfortune of the bridge company was that it had used these contributions to meet other losses occasioned by the entire default of two other contracting parties to pay anything whatever. What the opinion of this court on that appeal, therefore, has to say with regard to the first judgment of the Louisville & Nashville recovered against the bridge company for the years 1892 to 1895, both inclusive, has no

bearing upon the loss suffered under the subsequent judgment in the case now before the court, unless the facts are the same.

The claim of the Louisville & Nashville for its proportion of the surplus earnings of the bridge company for the years anterior to 1892 also resulted in a judgment in its behalf against the bridge company for the years 1888 to 1891, both inclusive. Its proof failed as to years antedating 1888. This judgment was for $150,775.88, and was affirmed by this court in 116 Ky. 258, 25 Ky. Law Rep. 405, 75 S. W. 285, under the style of "Louisville Bridge Company v. L. & N. R. R. Company." At the conclusion of the opinion in that case this court expressly withheld intimating any opinion upon the merits of any controversy that might arise between the bridge company and the present appellee. This judgment was paid off by the bridge company on the 11th day of January, 1904, and it amounted then to $314,534.35. Of this sum the appellee Pittsburg, Cincinnati, Chicago & St. Louis Railway Company furnished the amount of $170,204.97, on the contention that it had received of the surplus tolls owing to the Louisville & Nashville thus wrongfully accumulated and distributed only this amount, and that the balance of the amount had been distributed to other Northern railroads, and, as they were insolvent, the bridge company must suffer that loss. The present litigation is to determine this question; that is, whether or not this loss must fall upon the bridge company or fall upon the appellee Pittsburg, Cincinnati, Chicago & St. Louis Railway Company. By appropriate pleadings these facts are set forth, and it is sought on behalf of the bridge company to recover this amount of $144,329.28, which it was compelled to take out of the dividend

fund, under the contract, from the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, on the theory that it was under its management of the bridge company through its first, second, and third vice presidents that the tolls were kept at a rate that would accumulate a surplus, and that it was by its tort through these officers, who controlled the bridge company, that this surplus thus wrongfully accumulated was again wrongfully distributed to the advantage of the appellee Pittsburg, Cincinnati, Chicago, & St. Louis Railway Company and its predecessor, and that thus, the appellee having wrongfully accumulated the surplus and having wrongfully divided it between itself and its associates, it cannot now relieve itself of liability by returning only that proportion which it received of the share of the Louisville & Nashville; that the wrong is a joint and several tort, for which it or all of the wrongdoers must account.

It appears to the court from the facts which are not disputed that the agreement of the year 1880 or 1881, by which the surplus in question was accumulated, was wrongful and a fraud upon the Louisville & Nashville, and that the division of that surplus for the years in question was wrongful and was a fraud upon the Louisville & Nashville, and that this result was accomplished wholly by virtue of the control which the appellee Pittsburg, Cincinnati, Chicago & St. Louis Railway Company and its predecessor had over the bridge company through the stockholding interest of the Pennsylvania Railroad Company, in and by virtue of which the first, second, and third vice presidents of the appellee and its predecessor were elected to the board of directors of the bridge company and controlled its action. This control alone, by virtue of the officers which the two corporations had

in common, would not be sufficient to mulct the appellee for the entire loss brought about by their wrongdoing, as was well said in the opinion of the trial judge. It appears, however, beyond question, that the first, second, and third vice presidents of the appellee and its predecessor, who controlled the bridge company, did not manage or operate the bridge company to their individual profit; nor does it appear that any official action was taken by any of these officers for their individual aggrandizement. Their whole effort and intent was to manage the bridge company as a part and parcel of the Pennsylvania System. The Pennsylvania interest was their interest, and it was to further that interest that the contract was violated by keeping the tolls higher than the contract permitted and that the surplus thus accumulated was distributed among the Pennsylvania interests and the other railroads taken into the agreement. In short, there was no damage suffered by the bridge company by the accumulation of surplus. The damage was in the division, and this division was not among corporate officers, but among contracting railroads, one of which was the appellee and its predecessor, which had complete control of the bridge company through their common officers; and that it is this feature that makes the appellee responsible jointly and severally for the entire loss brought about by this wrongdoing. While the officers of the appellee were elected to the directory of the bridge company by the Pennsylvania Railroad, their management and control of the bridge company was wrongful to the bridge company and to the profit of the appellee, and it was the appellee as an entity that received and enjoyed this profit from this wrongful act, and therefore, under the principles of law

controlling such cases, it cannot enjoy the profit without suffering the correlative duty of liability for the loss.

It is not necessary in this opinion again to refer to the duties and obligations of a corporation to its stockholders, nor to the rights of the stockholders when the corporate organization of one corporation is controlled by outside or community interests. This matter has been fully considered on the previous appeal in 115 Ky. 176, supra, and it was because of this situation that the right of the minority stockholders to maintain this action in equity was there maintained. As an original proposition, therefore, the court concludes that the loss suffered by the bridge company on account of the accumulation and division of its surplus earnings adjudged to the Louisville & Nashville Railroad Company for the years 1888 to 1891, both inclusive, was a wrong and a tort committed upon the bridge company on behalf of and to the interest of the appellee, and that appellee is liable for the entire loss, and will not be permitted to repay only that proportion of the wrongful distribution which it received, leaving the bridge company to suffer the remainder, but that it must pay the entire loss; and as it has only a part, and the bridge company by virtue of the judgment has been compelled to pay the balance, it must now return to the bridge company what was thus paid by it, with interest and costs.

It is contended, however, on behalf of the appellee, that, though this be correct as an original proposition, it is foreclosed as a recovery to the bridge company by virtue of the previous judgment in this case on the principle of res judicata. It is conceded that the claims arising under the two judgments are not the

same, even though they be the result of a splitting of
one entire cause of action into two, as animadverted
upon in the appeal of Bridge Company v. L. & N.
R. R. Co., 116 Ky. 258, 25 Ky. Law Rep. 405, 75 S.
W. 285. While the cause or causes of action on be-
half of the Louisville & Nashville Railroad Company
against the bridge company for both losses proceeded
upon the same ground, and judgments in both were
recovered on the theory of a breach of the contract
of June 5, 1872, between it and the bridge company,
it by no means follows that the relation of the bridge
company to these causes of action is identical. On
the contrary, it appears from the agreed stipulation
of facts that the source and cause of the losses to
the bridge company were separate and distinct, or,
in other words, that it was caused to break its con-
tract with the Louisville & Nashville by virtue of
separate and distinct forces. It appears that its
failure to pay the Louisville & Nashville its propor-
tion of the surplus for the years 1892 to 1895, both
inclusive, was caused by its failure to collect any tolls
from the "Air Line" and "Monon," and therefore,
instead of paying the Louisville & Nashville what it
had received in its behalf, it wrongfully applied the
fund to other sources of expense. On the other hand,
it appears that it was never in possession of any part
of the surplus rightfully belonging to the Louisville
& Nashville, for the years anterior to 1892, and that
its failure to pay the Louisville & Nashville its pro-
portion of the surplus earnings for these years an-
terior to 1892 was caused solely by virtue of the
agreement of the Northern railroads, formed in 1880
or 1881, by virtue of which the Louisville & Nash-
ville was collusively excluded from participating, and
its proportion of the surplus was distributed among

the Northern railroads; and all of this was accomplished by virtue of the control which the appellee had over the bridge company through their officers in common, and this control was exercised and exclusively for the profit of the appellee. It thus results that, not only is the relation of the bridge company to the two losses separate and distinct causes of action, arising upon separate and distinct judgments, but that they are also founded in separate and distinct causes—one in its own breach of contract, and the other in a wrong or tort, originally intended against the Louisville & Nashville alone, but which resulted in a loss for the bridge company alone. Therefore no fact nor conclusion adjudged on the former appeal has any controlling effect upon, or is it a precedent, for any question involved here.

The cause of action of the bridge company here does not move upon the contract of June 5, 1872, but moves entirely in tort. The cause of action in the previous appeal moved entirely upon the contract, and it was there sought to recover the loss there suffered as an operating expense or loss. Neither the cause of action, nor the facts supporting them, nor the theory upon which the claims are litigated, are the same, or even similar. The cases cited by counsel for the appellee, (Tigo R. R. v. Blossburg, etc., R. R. 20 Wall. [U. S.] 137, 22 L. Ed. 331; City of New Orleans v. Citizens' Bank, 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202; Davis v. McCorkle, 14 Bush, 746), have no bearing on the case at bar. Those cases apply to an interpretation placed upon a contract when the same contract is again in litigation between the parties, or to a second appeal of the same case, which was the instance in Davis v. McCorkle. The principles of law distinguishing the

present appeal from the previous appeal were stated
by the Supreme Court of the United States in Crom-
well v. County of Sac, 94 U. S. 351, 24. L. Ed. 195,
Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204, and
Russell v. Place, 94 U. S. 606, 24 L. Ed. 214, and have
since been universally followed by the courts, state
and federal, and accepted as sound by all text-writers
on the subject of res judicata.  See Black on Judg-
ments (2d Ed.) vol 2, sections 506, 509, 614, 617, 618,
630, 726, 730, 733, 750; Schmidt v. Railroad, 119 Ky.
287, 20 Ky. Law Rep. 456, 810, 84 S. W. 314; Schuster
v. White, 106 Ky. 317, 50 S. W. 242, 20 Ky. Law
Rep. 1852; City of Newport v. Commonwealth, 106
Ky. 434, 50 S. W. 845, 51 S. W. 433, 45 L. R. A.
518; Yates v. Utica Bank, 206 U. S. 181, 27 Sup. Ct.
646, 51 L. Ed. 1015; Southern Pacific v. U. S., 183
U. S. 519, 22 Sup. Ct. 154, 46 L. Ed. 307; Third Na-
tional Bank v. Stone, 174 U. S. 432, 19 Sup. Ct. 759,
43 L. Ed. 1035.  We do not understand counsel for
appellees to dispute the principles of law decided by
these cases.  Their disputes touches the application
of these principles, and as this in turn must be con-
trolled by the pleadings and facts, and as we find both
the pleadings and facts regarding the loss suffered
by the bridge company under the judgment of the
Louisville & Nashville now in question are separate
and distinct from those applicable to the other loss
suffered under the judgment before this court on the
previous appeal in 115 Ky. 176, supra, there is no
estoppel.  The present case moves in pleadings and
fact upon wrong-doing and tort.  The previous case
in pleadings and facts moved upon a contract lia-
bility of the railroads to indemnify the bridge com-
pany. against all losses on the theory of their being
operating expenses, or in all events to be indemni-

fied against loss under the provisions of the contract.

It is contended, however, by appellee, that the theory of tort as a foundation for the present recovery cannot be maintained, for the reason that this theory was not directly and distinctly advanced until the reply came to be filed by the plaintiffs on May 7, 1904. We think, however, this is sufficient, as the appellee joined issue and the matter was litigated upon that theory. A similar condition was before the court in the case of Louisville Bridge Company v. L. & N., 116 Ky. 258, 75 S. W. 285, where the principle of estoppel was enforced against the bridge company, claiming a splitting of a cause of action after the splitting had been suffered and issues had been joined. Aside, however, from this principle of estoppel against the appellee to make this claim, we do not agree with the appellee that the reply is a departure. It appears to the court that it was in the nature of a pleading of a matter in estoppel of the appellee's plea of res judicata, and thus permitted by section 101 of the Civil Code of Practice.

The contention of appellee that if any recovery is adjudged it can only be against the Pennsylvania Railroad, because the proof of wrongdoing points to it alone, if to any one, is not maintainable, for the reason that as far as the Pennsylvania Railroad is connected with the matter it is only by virtue of its election to the directory of the bridge company through its stockholding interest of the first, second, and third vice presidents of its subsidiary companies. It does not appear, however, that any wrong was done to the advantage of the Pennsylvania Railroad, further than that advantage which results from its ownership of 57 per cent. of the stock of the appellee company. The wrong that was done in the accumula-

tion of the surplus earnings was the direct wrong of the first, second, and third vice presidents of the appellee company, who also controlled and directed the affairs of the bridge company; and the wrong done in the division of these earnings was not in the payment of any profits to the Pennsylvania Railroad Company, but in the payment of profits directly to the appellee. It was the appellee who received the benefit of the wrongdoing, and this by virtue of its control through common officers of the bridge company. It is the appellee, therefore, who must pay the loss which the bridge company has suffered.

The theory which is advanced that the accumulation and division of this surplus was an act intra vires the Louisville Bridge Company and to postpone competition in the erection of rival bridges is not maintainable. Among others is the sufficient reason that any bona fide scheme to postpone rivalry and thus conserve the interest of the bridge company as a direct entity would necessarily have counted upon the Louisville & Nashville Railroad Company as a participant; for without it no such scheme could have been feasible. At the time in controversy it was the only road at Louisville having an outlet to the south. A fair scheme between the railroads would have contemplated an interchange of traffic, and this would have been impossible without the Louisville & Nashville. The scheme in controversy, in which surplus earnings were accumulated and divided, not only ignored the Louisville & Nashville, but from the agreed facts it must be concluded that it was concealed from the Louisville & Nashville. An accumulation and division of surplus earnings fair to all of the railroads must necessarily have taken in the Louisville & Nashville as a factor, and thus only the

public would have been the sufferer. But the agreement here in question not only made the public the sufferer, but at the same time divided that which should, under fair agreement, have gone to the Louisville & Nashville among the other roads; and it is this unfair agreement solely as to the Louisville & Nashville that brought the loss now litigated upon the bridge company.

The fourth paragraph of the answer of appellee, filed May 7, 1904, pleads that the cause of action of the plaintiff occurred at each quarter of the year when the rebates were distributed, and that, as the last distribution occurred on December 31, 1891, more than 10 years have elapsed, and the cause of action is therefore barred by the statute of limitations. This plea is not maintainable, for the reason that by the distribution of the surplus alone, as hereinbefore set out, the bridge company was not damaged. It had no cause of action until the wrong of the appellee in the accumulation and distribution brought upon it a loss. It is a juncture of wrong and damage that gives rise to a cause of action, and that this did not occur, as far as the bridge company is concerned, until it was compelled to pay the judgment recovered by the Louisville & Nashville, and therefore the statute of limitations has no application to the case at bar. The claims and contention of appellants appeal most strongly to our sense of justice. Through no fault of theirs, or any one having the interests of the bridge company at heart, was any act done or wrong committed which occasioned a loss to the bridge company; but appellees and their predecessors, through their officers, who dominated and controlled the directory of the bridge company, have brought upon the bridge company the loss which it has sustained by conspir-

ing together for the fraudulent purpose of defrauding the Louisville & Nashville Railroad Company, and later carrying out this conspiracy through this same instrumentality by illegally collecting from the Louisville & Nashville Railroad Company, between the years 1880 and 1891, more than $900,000, and during the period covered by this litigation, to wit, 1888 to 1891, inclusive, more than $300,000, and, having thus wrongfully, unlawfully, and fraudulently collected these large sums, they caused the officers of the bridge company, who were in fact the officers of appellee and its predecessor, to distribute same among the Northern railroads, and, while this distribution or apportionment of rebates thus filched from the coffers of the Louisville & Nashville Railroad Company was apparently or formally made by the bridge company, yet it was in fact and in truth not the act of the bridge company, but the work of appellee and its predecessor. Appellee and its associates conceived the plan by which this wrong could be done, and they chose as the instrument for carrying out their unlawful purpose the bridge company. In order that there might be no miscarriage of their plan and arrangement to enrich themselves at the expense of the Louisville & Nashville Railroad Company, it was necessary that they should have absolute control of the directory of the bridge company; and therefore they chose as directors of the bridge company the first, second, and third vice presidents of appellee company, men who had no interest, pecuniary or otherwise, in the welfare of the bridge company, but whose sole aim and purpose was to serve and subserve the interests of appellee company and its predecessor.

Upon discovering that it had been discriminated

against and unfairly dealt with, the Louisville & Nashville proceeded to recover the moneys unlawfully and wrongfully collected from it. Every court of justice in which its cause was heard promptly decided that it was entitled to recover back so much of the money illegally taken from it as it was able to show had been so done. Can it be successfully maintained, under any principles of equity, justice, or right, that the bridge company, and especially the minority stockholders, should be made to bear the burden of this wrong, while appellee and its predecessor, who were directly responsible for it, escape liability? Clearly we think not. As between the bridge company, which was in fact innocent of any wrongdoing, and appellee and its predecessor and associates, who were responsible for all of the wrongs and mismanagement complained of, the burden should fall upon appellee. And this conclusion is strengthened by the further fact that, when restitution is demanded of them, appellees, while practically admitting the charges against them, seek to avoid responsibility upon technical and other grounds which, for the reasons above given, we have deemed insufficient.

It is therefore adjudged that the judgment of the lower court be reversed, and this case is now remanded to the court below, with instructions that a judgment be entered in favor of the plaintiffs, for the use and benefit of the bridge company, for the sum of $144,329.28, with 6 per cent. per annum interest thereon from the 11th day of January, 1904, and costs.