Lucille NUTT, Plaintiff in Error,

v.

John M. CARSON, Defendant in Error.

No. 38137.

Supreme Court of Oklahoma.

April 28, 1959.

Rehearing Denied June 9, 1959.

Bishop & Samples, Seminole, for plaintiff in error.

Foliart, Hunt & Shepherd, Oklahoma City, for defendant in error.

PER CURIAM.

This action was brought by Lucille Nutt for damages against defendant, a physician, for fraud and deceit practiced on her while she was his patient. In plaintiff's second amended petition and for her first cause of action, damages were sought for loss of earnings, decreased earning power, pain, suffering and mental anguish; her second cause of action was for punitive or exemplary damages. Defendant filed a demurrer on grounds that petition failed to state a cause of action, and that the action was barred by the applicable statute of limitation.

The court sustained the demurrer generally, and after saving exceptions, the plaintiff elected to stand on her seconded amended petition and thereupon the court dismissed the action and plaintiff perfected this appeal.

We must first determine whether plaintiff's second amended petition states a cause of action as the demurrer was for the purpose of testing the sufficiency thereof. We have consistently held a demurrer admits the truth of all facts well pleaded, together with all inferences which may be reasonably drawn therefrom, and the petition is to be liberally construed in favor of the plaintiff. Crews v. Garber, 188 Okl. 570, 111 P.2d 1080; Raley v. Thompson, 203 Okl. 633, 225 P.2d 171. In order to properly consider the sufficiency of said petition it will be necessary to examine the allegations contained therein.

For her first cause of action plaintiff alleged that the defendant John M. Carson is a licensed and practicing physician in Shawnee, Oklahoma. That plaintiff consulted him in the early part of 1953, for pains and swelling in her abdomen, and that Dr. Carson treated her until about March 16, 1953, at which time the doctor told her that in order to effect a cure of the condition from which she was suffering it would be necessary to remove her female organs. The defendant told her that her uterus, tubes and both ovaries were diseased and should be removed and the plaintiff consented and on March 19, 1953, the operation was performed.

Plaintiff further alleges that two or three days after the operation, and while she was still in the hospital, she complained to Dr. Carson that the left side of her abdomen still had a knot and the pain felt the same as before the operation; that Dr. Carson replied he had removed both ovaries, tubes, and the uterus and her pain and suffering must be coming from some other source. That plaintiff was discharged from the hospital March 29, 1953. About May 9, 1953, she reported that her right side was greatly improved but the knot and pain in her left side persisted, again Dr. Carson assured her that her trouble could not be due to female organs, because he had removed all of them and that she might be suffering from colon infection and that she took treatments from Dr. Carson about every two weeks for about 13 months.

She further alleges that during the prolonged course of treatment the pain and knot in the left side became more pronounced and she continued to inquire of the defendant as to the cause thereof, and upon one occasion, toward the end of the treatment, Dr. Carson told her he thought she was suffering from a mental condition and that in reality nothing was wrong with her. About two or three weeks later her condition became critical and not being able to contact Dr. Carson, she contacted Dr. C., a physician and surgeon in Shawnee and, after he examined plaintiff, advised an exploratory abdominal operation to determine if there was an intestinal block. That such operation was performed on June 16, 1954, and a diseased left ovary which had ruptured and formed a cyst as large as a basket ball was found and removed.

Plaintiff further alleged prior to her first operation that she was able to work and was gainfully employed, but as a result of the fraud and deceit practiced by defendant she was unable to work, and her physical and nervous systems have been permanently damaged, and she set forth damages for loss of earnings, decreased earning power, pain, suffering, and mental anguish. She then alleged that the pain and suffering, the financial loss and resultant damage with all the injuries and disabilities were directly and proximately caused by the deceitful and fraudulent acts of defendant, those acts being:

1. The defendant stated to Mrs. Nutt that he had removed all of her female organs, including both ovaries.

2. The defendant knew or should have known at the time of making the statement that he had not removed the left ovary. It is a surgeon's duty to know which organs he removes from a patient's body.

3. The defendant intended that Mrs. Nutt believe and rely upon his representation that both ovaries had been removed. Mrs. Nutt did rely and act upon the statement. She permitted the defendant to treat her for a period of some thirteen months.

4. Mrs. Nutt had on several occasions during treatment, called to the defendant's attention the similarity of the symptoms to those suffered before the operation. The defendant's assurances that it could not be female trouble since he had removed all female organs induced Mrs. Nutt to forego utilizing her own judgment. She did not seek medical aid and treatment for an infected female organ because she relied upon the truthfulness of defendant's statement, though her

personal experience and symptoms dictated such course of action. This failure to act permitted the diseased ovary to continue its destructive force upon her health and body, while she took treatments for other possible causes of the disease.

Plaintiff's second cause of action adopted the allegations in the first cause of action and alleged that inexcusable was defendant's conduct; reprehensible were his untrue, false and deceitful statements and for such careless indifference to her pain and anguish, plaintiff should be entitled to recover for said pain, suffering and damage as aforesaid, and in addition to that sought to be recovered in her first cause of action, punitive or exemplary damages, alleging a substantial amount.

■ Plaintiff's general allegations are that her injuries and disabilities are directly and proximately caused by the deceitful and fraudulent acts of defendant, and refers to Title 76 O.S.1951 §§ 2 and 3, relating to damages for deceit. Although our laws relating to damages for fraud and deceit may in some respect enlarge the common-law right of action, the same still rests upon fraud. Jewell v. Allen, 188 Okl. 374, 109 P.2d 235. In Thompson v. Teel, 204 Okl. 105, 227 P.2d 395, 400, we said:

"The rule relating to actionable fraud is well established in this state. As expressed in Littlefield v. Aiken, 130 Okl. 142, 265 P. 1054, actionable fraud exists when the following requisites are made to appear:

"(1) That defendant made a material representation, (2) that it was false, (3) that when he made it he knew it was false, or made it recklessly without knowledge of its truth and as a positive assertion, (4) that he made it with intention that it be acted upon by plaintiff, (5) that plaintiff acted in reliance upon it, (6) that he thereby suffered injury * * *."

In the case of Harris v. Graham, 124 Okl. 196, 255 P. 710, one Harris, pretending to be a physician, represented to Mary A. Graham when she went to him that for some time he had been able to treat and cure cancer; that the growth which she complained of was not a cancer; that he had medicine which, if she would take two teaspoons full every day and rub a little on the growth, would cause the growth to leave. Six weeks later he saw her again and informed her she was improving and would be well in a short time; that she went back three weeks later and he advised her she had virus in her blood and she would need more medicine; that if she would come back in three weeks, he would have some for her but when she returned about a month later he refused to see her. In this case we held:

"In an action for damages based upon fraud, in pretending to be a physician and prescribing a sure remedy for a disease, resulting in personal injury to the plaintiff, if there is any competent evidence tending reasonable to support the verdict of the jury, the judgment rendered pursuant thereto will not be disturbed on appeal.

" * * * and it is not error, but correct, for the court to instruct the jury that they may take into consideration the facts and circumstances, if any, tending to show that plaintiff's disease was aggravated, or whether proper treatment thereof was delayed or made impractical.

"In an action as above stated, it is not error, but correct, for the court to charge the jury, if they find from the evidence that the defendant practiced a fraud upon the plaintiff in pretending to be a physician, and treated her to her injury, and she submitted to the treatment in reliance upon such fraud, then they should find damages in such amount as the evidence showed to be the result of such fraud."

Although this case involved a defendant who held himself out as a doctor, we said:

"We think the jury was warranted in finding from the evidence that the

defendant practiced fraud and deceit on the plaintiff to get money from her, knowing that the remedy he offered was worthless as a curative agency, and this remedy was not only worthless, but aggravated the development and caused her to suffer, *and all the acts and pretentions of the defendant were the proximate cause of her delay and failure to obtain scientific and skillful treatment, until it was too late."*

In Krestich v. Stefanez, 243 Wis. 1, 9 N.W.2d 130, the court held:

"Where physician who left needles in Plaintiff's abdomen in performing operation subsequently denied having done so, but plaintiff after three years informed physician that she intended to seek other medical advice, physician's repetition of misrepresentations causing plaintiff to abandon her purpose constituted not mere malpractice, but a fraud redressable by an action of deceit which could be brought within six years from plaintiff's discovery that the representations were false."

■ In the case at bar plaintiff alleged defendant represented to her that he had removed all her female organs, including both ovaries, and that he knew or should have known that he had not and that such statements were false; that defendant intended for plaintiff to rely upon his statements and she did rely and act upon them and that she delayed seeking other medical treatment relying upon such false statements and that the diseased ovary continued its destructive force upon her health and body and she suffered damages thereby.

As we have heretofore said a demurrer admits the truth of all facts well pleaded, together with all inferences therefrom, and we hold the petition stated a cause of action against the defendant.

■ We cannot sustain defendant's contention that plaintiff's action is barred by the applicable statute of limitations. In Moses v. Miller, 202 Okl. 605, 216 P.2d 979, 980, we held:

"Where a physician who was employed to perform an operation to remove the gall bladder, and in reply to plaintiff's complaints repeatedly wrote patient telling her that her gall bladder was removed by him and that was not what was bothering her; that she would get better; that after a long period of time and receiving several such letters assuring her that her gall bladder had been removed, and upon being operated by other physicians who testified that her gall bladder was intact and in its regular place, that it had never been removed, and that when once removed it never reformed or grew back, there was sufficient evidence to present a question for the jury whether the physician fraudulently concealed from her that she had a cause of action so as to entitle her to sue within two years after learning that she had such cause of action."

Plaintiff alleged that she had no knowledge of the fraudulent representations made to her, and upon which she relied, until the second operation was performed on June 16, 1954, when the diseased and infected ovary was removed. She filed her action on June 13, 1956, which was within two years from the date she alleged she first learned the representations of the defendant were false, fraudulent and deceitful.

The judgment is therefore reversed with directions to the trial court to set aside the order sustaining the demurrer, reinstate the petition, and overrule the demurrer.

Reversed with directions.

The Court acknowledges the aid of the Supernumerary Judge N. S. CORN, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.