ROYAL CROWN COLA BOTTLING
COMPANY OF OKLAHOMA
CITY, INC.

v.

AETNA CASUALTY & SURETY
COMPANY

v.

Jay R. BOND.

No. Civ. 74–1071–M.

United States District Court,
W. D. Oklahoma.

June 28, 1977.

James W. Shepherd, Jr., Oklahoma City, Okl., for plaintiff.

Richard A. Proctor, Proctor, Fleming & Speck, Oklahoma City, Okl., for defendant and third party plaintiff.

John B. Hayes, Oklahoma City, Okl., for third party defendant.

## ORDER GRANTING THIRD PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING THIRD PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MORRIS, District Judge.

Both the third party plaintiff, Aetna, and the third party defendant, Bond, have filed motions for summary judgment in this case. In support of its motion, Aetna has referred the court to a brief filed by it in response to a motion for summary judgment filed against Aetna by the principal plaintiff, Royal Crown. Aetna has also submitted a brief in response to Bond's motion. In support of his motion Bond has submitted a brief styled "Response of Third Party Defendant, Jay R. Bond, to Motion for Summary Judgment of Third Party Plaintiff and Brief in Support of Motion for Summary Judgment;" an affidavit; and a brief in reply to Aetna's response brief.

The principal complaint and the third party complaint arise out of the same factual circumstances. In a previous action one D. G. Wright sued Royal Crown, the principal plaintiff here, for personal injuries arising in tort. Aetna was Royal Crown's insurer and undertook defense of the Wright action pursuant to a provision of the insurance policy. Aetna retained Bond to defend the Wright action on behalf of Royal Crown. The jury's verdict in the Wright action was in favor of Wright and against Royal Crown. The case was settled after trial for an amount in excess of the insurance policy limit. In this case Royal Crown seeks to recover from Aetna a sum equal to the excess of the policy limit which Royal Crown paid to settle the Wright suit. Royal Crown asserts several theories of recovery, one of which is in the nature of an attorney-malpractice claim, based on the alleged failure of attorney Bond to raise an available and dispositive statute of limitations defense to the Wright suit. The basis of Aetna's third party complaint is also Bond's failure to raise the statute of limitations defense. Bond has responded to Aetna's complaint with his motion for summary judgment, ironically, on the ground that the statute of limitations has run on Aetna's

claim against him. Aetna's motion for summary judgment asserts only that if the principal plaintiff, Royal Crown, is successful in its motion for summary judgment, then Aetna is entitled to judgment against Bond.

The material facts relevant to Bond's motion for summary judgment are undisputed. In June 1965 D. G. Wright commenced his action against Royal Crown to recover damages for personal injuries sustained in an accident which occurred October 5, 1963. Pursuant to its insurance policy on Royal Crown, Aetna undertook to defend Royal Crown against Wright's claim and Aetna employed attorney Bond for that purpose. The first Wright suit remained pending until September 13, 1971, when the plaintiff voluntarily dismissed the action without prejudice. Thereafter, in March 1972 Wright filed a second suit on the same cause of action against Royal Crown in the District Court of Creek County, Oklahoma. A voluntary dismissal of that action was filed on September 12, 1972. Meanwhile, on August 28, 1972, Wright again filed his action against Royal Crown in the District Court of Oklahoma County. The statute of limitations was not raised as a defense to the Oklahoma County action. That action went to trial on November 6, 1973; on November 13 Royal Crown rested its defense and the trial court overruled Royal Crown's demurrer to the evidence and its motion for a directed verdict; and on November 14 the case was argued, the jury was instructed, and the jury's verdict was rendered.

Bond did not raise the statute of limitations in the Wright suit. Here, Royal Crown in its complaint and Aetna in its third-party complaint contend that there was available in the Wright suit a dispositive limitations defense and that Bond was negligent in failing to raise it. Specifically, Royal Crown and Aetna rely on cases construing Oklahoma's savings statute, 12 O.S. § 100. That statute provides as follows:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff

fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

Royal Crown and Aetna contend that the statute provides for but a single grace-period filing, and that, accordingly, since the Wright suit which resulted in judgment against Royal Crown was the second such grace period filing, that suit was not saved by the savings statute and so was time-barred.

In his motion for summary judgment, Bond contends that Aetna's claim against him here is barred by the statute of limitations for the reason that Aetna's claim based on his failure to raise the limitations defense in the Wright suit accrued more than two years prior to the day when Aetna filed its third-party complaint.

Aetna's third-party complaint in this action was filed November 14, 1975. The parties agree that the applicable statute of limitations is two years and that such period began to run when Aetna's cause of action accrued. What is disputed is the date when Aetna's claim accrued. Bond contends that the claim accrued either at the time of the alleged negligence or at the time Aetna first sustained injury, and Bond argues that by either of these tests the claim accrued prior to November 14, 1973. Aetna contends, on the other hand, first that Aetna's claim did not accrue until such time as Aetna discovered or should have discovered Bond's negligence. Alternatively, Aetna contends that if the limitations period is reckoned from the date injury was sustained, then Aetna's filing was still timely for the reason that Aetna sustained no injury until the jury returned its verdict in the Wright case on November 14, 1973.

Bond argues in support of his motion that under the majority rule, as elucidated in an annotation at 18 A.L.R.3d 978, the statute of limitations in attorney malpractice cases commences to run, not from the date of

discovery or even the date of injury, but rather from the date of the negligent act or omission. Annot., 18 A.L.R.3d at 986. Bond asserts that the negligence complained of in the third party complaint, his failure to raise a limitations defense, occurred prior to November 14, 1973. Bond contends that under Oklahoma law such a defense should have been raised by an initial pleading or in the answer and could not have been raised by way of amendment or otherwise after November 13, 1973. Thus, Bond argues, the alleged negligent act or omission occurred more than two years prior to November 14, 1975. Alternatively, Bond argues that even if Aetna is correct and the statute of limitations in such a case does not commence until injury is sustained, this action is barred because Aetna in fact sustained injuries attributable to the alleged negligence prior to November 14, 1973. In this connection, Bond argues that all legal fees and trial expenses incurred by Aetna after the time at which a statute of limitations defense should have been pleaded in the Wright case would not have been incurred had the defense been raised and so such expenditures are attributable to the failure to raise such a defense and constitute redressable injury under Aetna's theory of recovery. Aetna urges that in malpractice cases a cause of action does not accrue and the statute of limitations does not begin to run until the plaintiff discovers the negligence or in the exercise of reasonable diligence should have discovered it. Aetna's argument is based on the fact that in two physician malpractice cases the Oklahoma Supreme Court has held that the statute of limitations did not begin to run until the negligence complained of was discovered. *Seitz v. Jones,* 370 P.2d 300 (Okl.1962); *Nutt v. Carson,* 340 P.2d 260 (Okl.1959). Aetna also relies on the fact that the Tenth Circuit acknowledged these cases in *Lewis v. Owen,* 395 F.2d 537 (10th Cir. 1968). On the strength of these cases Aetna argues that a malpractice action, whether medical or legal, does not accrue until the patient or client discovers or should have discovered the alleged negligence, and that, applying this test to Aetna's claim here, the cause of

action did not accrue until some time after November 14, 1973.

It appears that the Oklahoma court has not had occasion to decide the question when the statute of limitation begins to run in attorney malpractice cases. However, the Oklahoma court has said that

the general rule is, the statute of limitations begins to run when the cause of action accrues, and the true test to determine when the cause of action accrues is to ascertain the time when the plaintiff could first maintain his action to a successful result. *Turner v. Sooner Oil & Gas Co.,* 206 Okl. 344, 243 P.2d 701 (1952).

The Tenth Circuit, construing Oklahoma law, has also held that an action in negligence may not be successfully maintained until injury has been sustained. *Rawdon v. Stanley,* 455 F.2d 482 (10th Cir. 1972).

It is true, as Aetna contends, that in two medical malpractice cases, the Oklahoma court has recognized an exception to the general rule, holding that in those cases the statute of limitations commenced to run from the date when the negligence was or should have been discovered. However, the court notes that while Aetna characterizes the holdings in *Nutt* and *Seitz* as establishing an exception as to time of accrual, in all medical malpractice cases, these cases may stand only for the proposition that an accrual exception exists in fraudulent concealment cases. The United States District Court for the Western District of Oklahoma recently has suggested that the *Seitz* case is susceptible to the more limited reading. In *Knudson v. Weeks,* 394 F.Supp. 963 (W.D. Okl.1975) Judge Daugherty noted that the holding in *Seitz* is merely an expression of the well-recognized fraudulent-concealment exception to the general accrual rule, and not a new accrual exception specifically created for medical malpractice cases.

In *Knudson,* the plaintiff urged that the *Seitz* holding extended to malpractice cases generally and so should be applied to her negligence action against a surveyor for providing an inaccurate survey of plaintiff's land. The survey had been made on June 3, 1970, and had failed to show that the house

plaintiff intended to buy extended over the rear lot line and into a utility easement on an adjacent lot. On June 16, 1970, plaintiff purchased the property. In August 1970 the president of the local neighborhood association advised plaintiff that her house encroached on a community-owned greenbelt area but that he would take care of the problem by securing a quitclaim deed. Such a quitclaim deed was executed April 11, 1972. It was not realized during this time that the house encroached on the utility easement. In April 1973 plaintiff contracted to sell the property in question, at a substantially higher price than she had paid for it, but the sale fell through because a new survey revealed the encroachment into the utility easement. After curing the defect, plaintiff did eventually sell the property, but, due to changes in the general economic condition, at a much lower price than that agreed upon in the April 1973 contract.

Plaintiff filed suit on June 1, 1973, seeking to recover damages in the amount of the difference between the April 1973 contract price and the eventual sales price, claiming that the June 1970 survey failed to disclose the utility easement. Defendants asserted the statute of limitations, specifically claiming that plaintiff's claim accrued more than two years prior to June 1, 1973, and before she actually discovered the encroachment into the utility easement. Plaintiff argued the *Seitz* case. The court held that the statute of limitations barred plaintiff's action because her claim accrued on the day she bought the property, or at the latest on the day when she learned of the greenbelt encroachment. The court refused to hold that plaintiff's claim accrued only upon her discovery of the utility easement encroachment. The court explained his holding as follows:

> As a general rule, the mere ignorance of the existence of a cause of action or the facts constituting a cause of action on the part of a person in whom a cause of action lies will not toll its running. This rule applies unless a statute specifically provides that the limitations do not begin to run until the person in whom the cause of action lies has actual knowledge of it,

or unless there has been a fraudulent concealment of the cause of action on the part of the person against whom it lies.

. . . . .

. . . Plaintiff attempts to bring herself within the fraudulent concealment exception to the general rule. She cites and relies on *Seitz v. Jones*, 370 P.2d 300 (Okl.1962) wherein the court held that a tort cause of action based on a physician's malpractice did not accrue until the plaintiff learned of the physician's negligence. Plaintiff attempts to analogize the surveyor's negligence to the physician's malpractice. Obviously the special physician-patient relationship is absent in the case of a surveyor and client. Further, the facts of the *Seitz* case are clearly distinguishable from the facts of this case. In *Seitz* the plaintiff's physician left a needle in her body during an operation. Thereafter, the plaintiff complained of pain but the physicians did nothing to locate the cause of the pain. The court found that it was the physician's inaction which delayed the discovery of the tort and which prevented the statute of limitations from running. The court found that such inaction amounted to fraudulent concealment and that the physician could not take advantage of the statute of limitations in these circumstances due to his wrong.

Plaintiff cannot take advantage of the professional malpractice exception announced in *Seitz*. This rule is a mere expression of the fraudulent concealment rule. It cannot be said that Hughes took any action comparable to the action of the physicians in *Seitz* which would have the effect of concealing from Plaintiff the existence of her cause of action. There being no fraudulent concealment or statute which would delay the accrual of Plaintiff's cause of action, if any, against Hughes, the applicable limitations period would begin to run as soon as Plaintiff bought the property, or at the latest, no later than August of 1970. *Id.* at 973–74.

The court in *Knudson* did not discuss *Nutt v. Carson,* the other medical malpractice case relied upon by Aetna here. However, this court notes that the element of fraudulent concealment was also present in *Nutt,* where a patient brought a fraud and deceit action against her physician, alleging that he falsely represented to her that he had removed all her female organs and continued to make such misrepresentations when plaintiff repeatedly complained of a knot and pain in her left side. Plaintiff further alleged that defendant continued to treat her, twice a month for thirteen months, and that during this time defendant repeatedly assured her that her pain could not be due to her female organs because he had removed same. Finally defendant advised plaintiff that her pain was due to some mental condition. Eventually plaintiff's condition became critical and she consulted another doctor. This consultation resulted in surgery which revealed a diseased ovary and ovarian cyst the size of a basketball. The Oklahoma Supreme Court held that the plaintiff had stated a cause of action in deceit and fraud and that her petition was timely filed since it was filed within two years of the day of the second surgery when she first learned that defendant's representations had been deceitful and fraudulent.

In the case at bar Aetna has alleged no facts suggesting the presence of deceit or fraudulent concealment which would bring this case within the rule applied in *Nutt* and *Seitz.* Nor has Aetna shown the court that the rule is anything other than an expression of the fraudulent concealment exception. In this connection, the court notes that Aetna argues that the Tenth Circuit has held that the limitations period in a medical malpractice case begins to run only when the negligence is discovered or should have been discovered. Aetna relies on *Lewis v. Owen,* 395 F.2d 537 (10th Cir. 1968). There the Tenth Circuit did state that "The Oklahoma courts accept the rule that the limitation period in malpractice actions does not begin to run until the patient learns, or in the exercise of reasonable care and diligence should have learned,

of the negligent acts of the physician," *Id.* at 540, citing *Seitz.* However, the court in *Lewis* went on to find that under the facts presented in *Lewis,* the action was barred, even under the rule that the limitations period commenced only upon plaintiffs' discovery of the alleged negligence. Thus, the Tenth Circuit has not ruled directly on the application of *Seitz* in a case, such as this one, where an action would be sustained upon one reading of the holding but barred under another reading. Nor has the Tenth Circuit addressed the question whether the holding in *Seitz* creates an accrual exception applicable in all medical malpractice cases or whether it is merely an instance of the fraudulent concealment exception. And, in any event, the court in *Lewis,* a medical malpractice case, indicated no view as to the rule to be applied in an attorney malpractice case.

Moreover, even if these cases establish a special accrual exception as to medical malpractice cases, Aetna has not shown the court any policy considerations, analogies or precedents indicating that the exception should be extended to attorney malpractice cases or that the Oklahoma court would so extend it.

Defendant Bond contends that Aetna's claim accrued when the alleged act of negligence occurred and defendant cites the court to an Oklahoma case, *Walker v. Bowman,* 27 Okl. 172, 111 P. 319 (1910), which held that as to an action against an abstractor for errors or imperfections in an abstract, the action " 'accrues at the time the examination is made and reported, and not when the error is discovered or the damages result therefrom.' " *Id.* at 173, 111 P. at 320. However, the court need not decide the applicability of this case to attorney malpractice cases, since even under the general rule that accrual dates from day of injury, Aetna's claim against Bond is barred. It remains to be determined when that was.

As noted above, the general rule in Oklahoma is that a negligence action may not be maintained unless and until the

plaintiff has sustained injury, because injury is an essential element of the claim. Thus, the question on this motion is whether Aetna sustained injury attributable to the alleged negligence more than two years prior to November 14, 1975. Aetna contends that its injury was sustained within two years, on November 14, 1973, the date the jury in the Wright case returned its verdict. Bond argues that, assuming, as Aetna contends, that the statute of limitations was a valid and dispositive defense in the Wright action and that Bond's failure to raise it constituted negligence, any expenses for trial preparation or trial incurred by Aetna after the time when Bond should have raised the defense were expenses which would not have been incurred had the statute been properly pleaded. Accordingly, the imposition of any such unnecessary expenses constituted injury redressable in an action in negligence and sufficient to furnish the element of injury essential to accrual of such a claim. It is clear that such unnecessary expenses were incurred by Aetna prior to November 14, 1973, for Oklahoma law provides several methods for presenting such a limitations issue prior to trial, methods which properly utilized would have spared Aetna the pretrial and trial expenses of defending the Wright case on the merits and should, in fact, have resulted in disposition of the case long before trial.

In Oklahoma a statute of limitations defense which appears on the face of a petition may be raised by demurrer. *Howard v. Jeffrey*, 268 P.2d 897 (Okl.1954). The petition in the Wright case is in the record here as an exhibit attached to the motion for summary judgment of plaintiff Royal Crown. It does not allege on its face the multiple filings which Aetna says establish a statute of limitations defense, but it does allege on its face that the injury complained of by Wright occurred in October 1963, almost nine years prior to the filing of the petition and it alleges no facts tolling the statute. Under Oklahoma law, a plaintiff who seeks to avoid a limitations defense on the ground that the statute was tolled must allege and prove the facts pertinent to such tolling. *H. F. Wilcox Oil & Gas Co. v.*

*Diffie*, 186 F.2d 683 (10th Cir. 1950); *Gulf Coast Western Oil Co. v. Trapp*, 174 F.2d 339 (10th Cir. 1949); *Owens v. Luckett*, 192 Okl. 685, 139 P.2d 806 (1943); *Johnson v. State*, 173 Okl. 508, 49 P.2d 141 (1935); *Owens v. Clark*, 154 Okl. 108, 6 P.2d 755 (1932); *Froage v. Webb*, 65 Okl. 149, 165 P. 150 (1917). Thus, the August 1972 Wright petition showed on its face the existence of a statute of limitations defense, and while it was not the particular defense relied upon by Aetna here, it nonetheless rendered the petition demurrable. And, of course, had the court in the Wright case permitted amendment to the petition to allege the multiple filings relied upon as tolling the statute, then the petition would have been demurrable under Aetna's theory here. In this connection, the court notes that in three of the four Oklahoma cases which support Aetna's claim that the August 1972 filing was ineffective because 12 O.S. § 100 does not permit successive dismissals in the grace period, the challenge to the successive dismissals and the multiple filings was made by way of demurrer and the demurrer was sustained prior to trial. *Fishencord v. Peterson*, 185 Okl. 542, 94 P.2d 910 (1939) (petition dismissed on demurrer and less than two weeks after petition was filed); *McDonald v. Epps*, 176 Okl. 348, 55 P.2d 1018 (1936); *Walker v. L. E. Meyers Const. Co.*, 175 Okl. 548, 53 P.2d 547 (1935).

The court further notes that in Oklahoma, a statute of limitations is to be raised by answer or initial pleading and is waived if not so raised. *Morrissey v. Shriver*, 88 Okl. 269, 214 P. 702 (1923); *Buchner v. Baker*, 65 Okl. 130, 164 P. 659 (1917); *St. Louis S. F. R. Co. v. Bloom*, 39 Okl. 78, 134 P. 432 (1913). Thus the limitations question should have been raised soon after the filing of the third Wright action in August 1972. In this connection the court notes that the demurrer or answer should have been filed within 20 days of the date that summons was returnable, 12 O.S. § 283, and that the answer in the Wright case was in fact filed on or about October 28, 1972. Had the limitations defense been timely raised, Aetna would have been spared all

litigation expenses not associated with presentation of the limitations defense, expenses which Aetna did in fact incur and incurred prior to November 14, 1973.

Thus, under Aetna's theory of recovery on its third-party complaint here, the limitations defense available and unavailed of in the Wright case should have been raised by demurrer to the petition, would have resulted in disposition prior to November 6, 1973, the date of trial, and would have resulted in sparing Aetna litigation expenses incurred prior to November 14, 1973, in defending the case on the merits.

The court further notes that pretrial disposition may be accomplished in Oklahoma via a motion for summary judgment, Rules for District Courts of Oklahoma, Rule 13, 12 O.S. Ch. 2 App., and that this procedure, too, might have been utilized in the Wright suit, if for some reason a demurrer were not sustained. such a motion, too, would necessarily have resulted in a pretrial disposition which would have spared Aetna the expenses of discovery, trial preparation and trial which Aetna here incurred prior to November 14, 1973.

▊ Assuming, as Aetna does, that the statute of limitations defense was dispositive of the August 1972 Wright suit, there can be no dispute but that a properly pleaded limitations defense in the Wright suit would have spared Aetna expenses and resulted in disposition of that suit prior to November 14, 1973, the last day of trial. Accordingly, Aetna's claim against Bond, which was not filed until November 14, 1975, is barred because Aetna sustained injuries attributable to the alleged negligence prior to November 14, 1973. In this connection the court notes that although Aetna asserts in its brief on this motion that it sustained no injury until the jury rendered their verdict in the Wright case, in its third party complaint Aetna seeks as an item of damages "trial expenses in the amount of Eight Thousand ($8,000.00) Dollars." Thus Aetna actually seeks to recover in this action for injuries sustained prior to November 14, 1973 (the day the jury returned its verdict) and for such injuries to be recoverable the act of negligence and injury must have occurred prior to that date. The fact that additional injuries may have been sustained on that date or after that date or may be sustained in the future is not material. If there is a coincidence of a negligent act with the fact of some damage, a cause of action comes into being and the statute of limitations begins to run even though the ultimate damage is unknown or unpredictable. *United States v. Reid*, 251 F.2d 691 (5th Cir. 1958).

The limitation period on the third party claim in this case began to run when the claim first accrued, which was some time prior to November 14, 1973. Accordingly, the limitation period had elapsed by the time the third party complaint was filed on November 14, 1975, and the third party complaint is therefore barred by the statute of limitations.

The court notes that while the third party complaint is stated in two separate counts, it actually asserts only a single claim for relief—the claim discussed above. The two counts differ only with respect to the damages sought to be recovered. The first count is an action over against Bond for any damages recovered against Aetna in the principal action by Royal Crown. The second count is an action for the damages sustained by Aetna as a result of the expenses of the Wright suit and the adverse verdict therein. Bond's motion for summary judgment is addressed to the entire third party complaint and Aetna has responded to it as such. Aetna has not attempted to distinguish the counts in its complaint with respect to this motion and the court finds there is only one claim stated there. Indeed, Aetna has admitted that "the statute of limitations in this case is two years." Thus, the limitations defense asserted in Bond's motion for summary judgment is valid against both counts in the third party complaint. The motion of the third party defendant Bond is accordingly granted and Aetna's motion for summary judgment is denied.