624 F.2d 145
 7 Fed. R. Evid. Serv. 115
 UNITED FIDELITY LIFE INSURANCE COMPANY (as Successor to
National Educators Life Insurance Company), a
Texas Corporation, Plaintiff-Appellee,
v.
The LAW FIRM OF BEST, SHARP, THOMAS & GLASS, a partnership
composed of Joseph M. Best, Joseph A. Sharp, Jack
M. Thomas and Joseph F. Glass, as
co-partners, Defendants-Appellants.
 No. 78-1732.
 United States Court of Appeals,
Tenth Circuit.
 Argued March 12, 1980.
Decided June 23, 1980.
 
 Howard K. Berry, Sr., Oklahoma City, Okl. (Howard K. Berry, III, Oklahoma City, Okl., with him on brief), for plaintiff-appellee.
 Deryl Lee Gotcher of Jones, Givens, Brett, Gotcher, Doyle & Bogan, Inc., Tulsa, Okl. (Thomas R. Brett, Tulsa, Okl., with him on brief), for defendants-appellants.
 Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 United Fidelity Life Insurance Company, a Texas corporation, brought a malpractice action against the law firm of Best, Sharp, Thomas and Glass, an Oklahoma partnership. Trial was to a jury, which returned a verdict in favor of United in the sum of $20,000. The law firm appeals the judgment entered against it. The background facts must be set out in detail if the controversy is to be understood.
 
 
 2
 In 1964, the predecessor of United engaged the law firm of Best, Sharp, Thomas and Glass, hereinafter referred to as the Defendants, to file suit on a note and to foreclose a mortgage on certain real property in Oklahoma. The note was executed by a corporation and guaranteed by various individuals. The Defendants brought suit for United's predecessor against the defaulting corporation and the individual guarantors. Foreclosure was completed and the property in question was bought by United at a sheriff's sale. There remained a deficiency. However, no deficiency judgment was sought against the corporate judgment debtor, since it had no other assets. The foreclosure judgment provided further that any relief against the individual guarantors would be held in abeyance.
 
 
 3
 In 1970, the Defendants filed on behalf of United a motion for judgment against the guarantors for the difference between the amount of the money judgment against the corporate debtor and the amount received at the sheriff's sale. The guarantors in turn filed a motion for judgment, asserting that United had failed to file a motion for deficiency judgment within ninety days of the foreclosure sale, and therefore, under Oklahoma law, had no claim against the guarantors for any deficiency. 12 Okl.Stat. § 686. The guarantors also asked for attorney's fees and costs.
 
 
 4
 The Oklahoma state court handling the foreclosure proceeding entered judgment in favor of United and against the guarantors in the amount of $10,000. The guarantors appealed. The Oklahoma Court of Appeals affirmed. However, on writ of certiorari the Oklahoma Supreme Court reversed the Court of Appeals and ruled in favor of the guarantors. Apache Lanes, Inc. v. National Educators Life Insurance Company, 529 P.2d 984 (Okl.1974). In so holding the Oklahoma Supreme Court relied on a statute which provided that if no motion for a deficiency judgment is sought within ninety days from the date of a foreclosure sale the proceeds from the sale shall be deemed to be in full satisfaction of the mortgage debt. Based on that statute, the Oklahoma Supreme Court held that a mortgagee, such as United, who first sought a deficiency judgment against the guarantors of a mortgage note some five years after the foreclosure sale had no cause of action against the guarantors because the debt, under the statute, had been discharged.
 
 
 5
 On January 9, 1975, the Oklahoma Supreme Court denied rehearing in the proceeding above referred to. On February 4, 1975, United was notified by letter from the Defendants that the Oklahoma Supreme Court had set aside the judgment which United had previously obtained against the guarantors. After indicating their displeasure with the outcome, the Defendants stated that all appellate remedies had been exhausted and that "there is nothing further to do but to close our file."
 
 
 6
 On February 7, 1975, the guarantors, defendants in the state foreclosure proceeding, filed a motion in the state trial court asking that the court tax costs and award attorney's fees as provided for by 12 Okla.Stat.1971 § 936. The particular attorney representing United in the state foreclosure proceeding testified at trial that a few days after the motion was filed, he advised United in a telephone conversation that such a motion had been filed, and that he was instructed to "fight it." The representative of United with whom this conversation was supposed to have taken place, also testified at trial and he denied any such conversation. Be that as it may, it is undisputed that thereafter the Defendants had no further contact of any nature with United until August 29, 1975. In the meantime the guarantors' request to tax costs and award attorney's fees was going forward.
 
 
 7
 The state trial court handling the foreclosure proceeding held hearings on April 11, 1975, and May 7, 1975, on the question of costs and attorney's fees. United was represented at these hearings by the Defendants. On May 7, 1975, the state trial court entered an order requiring United to pay an attorney's fee to the guarantor defendants in the sum of $20,000, plus court costs in the amount of $2,285.38. On May 19, 1975, counsel for United filed a motion for a new trial in connection with that part of the order which allowed costs. A day or so later an amendment to the motion for a new trial was filed in which the award of attorney's fees was also challenged. On June 3, 1975, the motions for new trial on the matter of court costs and attorney's fees were denied. On July 3, 1975, counsel for United filed a petition for appeal with the Oklahoma Supreme Court. Finally, on August 29, 1975, counsel advised United, by letter, as follows:
 
 
 8
 The defendants in the above styled case filed a Motion to Tax Costs and Attorneys' Fees against the National Educators Life Insurance Company and this matter was heard several months ago. After argument and presentation of evidence the Court awarded the individual defendants the sum of $20,000 attorney fees plus $2,285.38 for the costs of the appeal. We have until the 10th of September, 1975, to obtain a $23,000 supersedeas bond. Would you please advise immediately who we should obtain the supersedeas bond from. It can be a corporate bond in that amount. Thanking you for your immediate attention to this matter I remain, Very truly yours, Best, Sharp, Thomas & Glass.
 
 
 9
 As above mentioned, United claims that it didn't even know that the guarantors had made claim for court costs, and attorney's fees, let alone that it had a judgment entered against it for some $23,000, until the August 29th letter. As we read the record, it is the position of the Defendants that one of its members did advise United, by telephone, a few days after the motion to tax costs and award attorney's fees was filed, that such a motion had been filed. However, the Defendants concede that they had no other communication with United concerning the matter from the time of the disputed telephone call until the letter of August 29th.
 
 
 10
 Thereafter, United discharged the Defendants as its attorney, and obtained new counsel to perfect its appeal from the judgment awarding costs and attorney's fees. On appeal, the Oklahoma Supreme Court reduced the award of costs from $2,285.38 to $516, but refused to even consider the possible excessiveness of the attorney's fee award, on the ground that the motion seeking reconsideration of the award of attorney's fees had not been timely filed in the state trial court, and that under local statute such omission precluded appellate review of the matter. National Educators Life Insurance Company v. Apache Lanes, Inc., 555 P.2d 600 (Okl.1976). United later paid the guarantors some $20,516 to satisfy the judgment.
 
 
 11
 It was in this tangled setting that United brought the present action against the Defendants on July 12, 1977. United charged that the Defendants negligently represented United in the proceedings in the state court relating to court costs and attorney's fees, and further that the Defendants were negligent in failing to preserve for appellate review the issue of the excessiveness of the award of attorney's fees. United sought damages in a total amount of $28,516. In this regard it was United's position that if the Defendants had properly, i. e., non-negligently, represented United at the hearing on costs and attorney's fees, no costs would have been allowed, and the award of attorney's fees would have been $2,000, not $20,000. Also, United asked to be reimbursed for the $10,000 paid its new counsel to perfect and pursue the appeal of the order allowing costs and attorney's fees to the Oklahoma Supreme Court.
 
 
 12
 The principal matter raised on appeals concerns the Oklahoma two-year statute of limitations. United filed its action against the Defendants on July 12, 1977. The Defendants assert that any possible negligence on their part occurred at the hearing in the state court on the motion to tax costs and award attorney's fees, held on April 11 and May 7, 1975, and in connection with the subsequent filing of the motions for new trial, which occurred on May 19 and May 20, 1975.
 
 
 13
 Citing Royal Crown Cola Bottling Company v. Aetna Casualty & Surety Company, 438 F.Supp. 39 (W.D.Okl.1977), affirmed on appeal in an unpublished opinion (No. 77-1893) filed July 2, 1979, the defendants contend that in a malpractice action against an attorney the two-year statute of limitations commences to run when the act of negligence occurred, and not when the act of negligence was discovered by the victim of such negligence. Assuming, then, that the last act of negligence on the part of the defendants occurred on May 20, 1975, the action was filed more than two years from that date, and, according to the Defendants, is barred by the statute. The trial court found, however, that the two-year statute did not commence to run until United received the August 29th letter from the Defendants wherein United was advised for the first time that a hearing had been held in April and May, 1975, on the guarantors' motion to tax costs and award attorney's fees, and that judgment had been entered against it for some $22,000. The trial court held that, as a matter of law, the defendants had, in effect, fraudulently concealed their actions from United until the August 29th letter, which was apparently prompted by the need for an appeal bond, and not by any inclination on the part of the Defendants to apprise their client of its predicament. If the two-year statute did not commence to run until August 1975, then the present action was commenced within the two-year period. Before looking at the merits of the Defendants' argument, some procedural matters should be examined.
 
 
 14
 The Defendants claim that United did not allege in its complaint any "fraudulent concealment." It is true that those exact words are not in the complaint. However, United did allege that the Defendants had failed to report to its client, United, the status and progress of the litigation, and, specifically, that the Defendants "failed to advise this plaintiff of the filing of the motion for fees and costs, of the adverse order for payment thereof, of the motions for new trial and of the latest appeal to the Supreme Court, until the time for superseding the order was about to expire and after its opportunity to defend and protect its position by the employment of other counsel no longer existed." Even more specifically, United alleged that in thus failing to keep their client, United, apprised of the course of events, the Defendants "sought to conceal its errors and mistakes." In short, we find that wrongful concealment was pled.
 
 
 15
 The Defendants sought to raise the two-year statute throughout the entire course of the proceedings. A motion to dismiss on the basis of the two-year statute was denied without prejudice. The pre-trial order listed the statute of limitations as one of the issues in the case. However, shortly prior to trial, the trial court, on the basis of depositions and exhibits, ruled that the two-year statute did not bar the action. However, at the end of the presentation of evidence, the Defendants again moved to dismiss on the basis of the statute. This motion was denied. In denying the Defendants' motion for new trial the trial court specifically noted that, based on the uncontroverted evidence adduced at trial, the statute simply did not commence to run in May 1975, but only in August (or possibly September) 1975, and that therefore the present action, filed in July 1977, was brought within the two-year period. Under all of the circumstances, the trial court did not err in concluding that as a matter of law the present action was not barred by the statute.
 
 
 16
 Accepting the premise that in a malpractice action against an attorney the statute of limitations commences to run when the acts of negligence occurred, it is also not in any real dispute that the running of the statute can be tolled by fraudulent concealment by the attorney of his negligent acts. In Liberty Nat. Bank of Weatherford v. Lewis, 172 Okl. 103, 44 P.2d 127, 129 (1935), the Oklahoma Supreme Court declared as follows:
 
 
 17
 An exception to the usual rule that the time of limitation begins to run when the cause of action has accrued is found in cases where the party seeking the benefit of the statute willfully conceals from the opposite party material facts or information necessary to the accrual of his cause of action. And especially is this so when there exists between the parties a fiduciary relationship, or one of trust.
 
 
 18
 In a somewhat analogous situation, the Oklahoma Supreme Court in Farmers' State Bank v. Keen, 66 Okl. 62, 167 P. 207, 209 (1917) commented as follows:
 
 
 19
 Generally speaking, when a fraudulent transaction is a matter of public record, so that a party interested has abundant means of finding out the facts of such record, he is charged with notice of the record facts; and, though he may not have actual notice, he is held to have constructively discovered the acts constituting the fraud. However, a different rule prevails when a relation of trust and confidence exists. The rule, correctly stated, is that in case of fraud the statutes of limitation begin to run only from the time of the discovery of the fraud, or from such time as the defrauded party, with ordinary diligence, might have discovered the fraud. If one acts as agent for another in a transaction, ordinary diligence does not require that public records be searched in order to find out whether or not the trust relationship was abused. The principal in such a case has a right to rely upon the fidelity of the agent, and the agent is charged with the duty of revealing the facts to the principal.
 
 
 20
 There existed, of course, a fiduciary relationship between the Defendants and their client, United. The Defendants had a duty to keep their client promptly apprised of the course of the litigation. In April and May 1975, hearings were held on the question of costs and attorney's fees. It is undisputed that United knew nothing about the hearings, or of the fact that in May 1975 a judgment had been entered against it for some $22,000 until August 29, 1975. Under the circumstances, the trial court did not err in concluding as a matter of law that there was willful concealment by the Defendants which tolled the running of the statute. To hold to the contrary would permit the Defendants to benefit from their own misconduct.
 
 
 21
 The remaining matters urged as ground for reversal can be disposed of quickly. The Defendants urge as error the admission of certain evidence offered by United, and the rejection of certain other evidence offered by them. We find no error in this regard. Evidence regarding the foreclosure proceeding and the attempt to obtain a deficiency judgment was admissible. Proffered testimony which would have revealed settlement efforts in the deficiency judgment proceedings was properly excluded under Fed.R. of Evid., 403. Under that rule a trial judge may exclude evidence otherwise relevant if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. Under the rule a trial judge has considerable discretion, and the judge in the instant case did not abuse that discretion.
 
 
 22
 The instructions given were adequate, and there was no error in denying the Defendants' requested instructions Nos. 1, 2 and 3.
 
 
 23
 As mentioned above, one item of damage claimed by United was the $10,000 fee it paid new counsel to pursue the appeal to the Oklahoma Supreme Court. In our view this matter presented an issue for the jury. It was United's theory that if the Defendants had represented it properly at the hearing on attorney's fees, the attorney's fee allowed would have been only $2,000, at most, and that it was only because the Defendants were negligent in their defense of this matter that the award was for $20,000. In such circumstance, United argues that it had to protect itself by appealing the award, and that the cost of such appeal was a natural consequence of Defendants' negligence. We think this posed a question for the jury, and the trial court would have erred had it taken the matter from the jury.
 
 
 24
 Judgment affirmed.