NORTHWESTERN NATIONAL INSUR-
ANCE COMPANY, Plaintiff,

v.

James G. OSBORNE, Defendant.

Civ. A. No. 83–151.

United States District Court,
E.D. Kentucky,
Covington Division.

Nov. 2, 1983.

Ron Parry, Covington, Ky., for plaintiff.

Robert G. Breetz, Louisville, Ky., for defendant.

## OPINION and ORDER

BERTELSMAN, District Judge:

This matter is before the court on the defendant's motion to dismiss based on the statute of limitations, and plaintiff's countermotion to strike the limitations defense.

This legal malpractice action was brought by the plaintiff, Northwestern National Insurance Company, against the defendant, James G. Osborne, Attorney at Law, of Covington, Kentucky.

In March 1979, one Mary L. Deitsch brought an action in the Kenton County, Kentucky, Circuit Court against her insurer, Northwestern National Insurance Company, to recover damages for a loss of her home by fire and for wrongful denial of coverage. Northwestern retained Osborne to defend it against Deitsch's claim.

The litigation did not proceed smoothly. In the course of defending Northwestern, Osborne, at least in the opinion of the state trial court where the *Deitsch* action was pending, behaved in such a manner as to unreasonably impede the discovery process. The state trial judge felt that extreme sanctions were warranted under Kentucky Civil Rule 37, which is substantially the same as the corresponding Federal Rule.

Accordingly, on March 5, 1981, the state trial court granted Deitsch's motion to strike Northwestern's answer and hold Northwestern in default for its alleged failure to produce witnesses for deposition and for other alleged violations of the Kentucky Civil Rules governing the discovery process. In the order of March 5, 1981, the court assigned the matter for a damages trial on March 10th of that same year, and ordered trial briefs filed on the damages issues. The March 5th order specifically recited that it was not an appealable order.

Osborne continued to represent Northwestern, promptly notified it of the unfortunate events recited above, and undertook to try to get the matter straightened out.

Apparently feeling that he would be better off in the Kentucky appellate court rather than remaining before the same trial judge, Osborne moved that in lieu of holding the damages hearing the trial court certify the March 5 order as appealable. The state trial court granted this motion and on March 10, 1981, an order was entered purporting to certify the order as appealable. As discussed, *infra*, this court concludes that this certification did not in fact render the Order of March 5, 1981, a final appealable order. Nevertheless, an appeal was taken and heard by the Kentucky Court of Appeals. Discretionary review was denied by the Supreme Court of Kentucky. Later, having retained new counsel, Northwestern settled with Deitsch and filed this action against Osborne. A recapitulation of the specific dates and events follows:

*March 5, 1981*, Order of default entered.

*March 9, 1981*, Osborne filed a Motion to Set Aside the Order of Default on behalf of Northwestern and moved the state trial court to strike the portion of

its Default Order which provided that it was not an appealable order.

*March 10, 1981,* the state trial court sustained this motion, struck the language, "THIS IS NOT AN APPEALABLE ORDER," and stated that the Default Order was "further amended to read that This is a Final and Appealable Order and there is no just cause for delay."

*April 1, 1981,* Osborne on behalf of Northwestern filed a Notice of Appeal to the Kentucky Court of Appeals from the Order of March 5, 1981.

*February 19, 1982,* the Kentucky Court of Appeals (Kentucky's intermediate appellate court) affirmed, stating that the trial court had acted within its discretion.

*June 8, 1982,* Northwestern wrote Osborne a letter stating that new counsel would take over the *Deitsch* litigation "just as soon as the Supreme Court of Kentucky rules on our pending motion for discretionary review regardless of the outcome." No contention is made that Northwestern incurred any expense with the new firm until after the Supreme Court acted, however.

*June 29, 1982,* the Supreme Court of Kentucky denied discretionary review.

*December 17, 1982, and June 2, 1983,* Northwestern settled with Deitsch for $250,000, plus an assignment of part of Northwestern's claim, if any, against Osborne. (For reasons not clear to this court, there were two settlement agreements).

*June 28, 1983,* this action was filed by Northwestern against Osborne in United States District Court for the Eastern District of Kentucky.

Osborne moved to dismiss this action on the ground that it was barred by Kentucky's one-year statute of limitations for malpractice. This court is thus presented with the knotty problem of determining when Northwestern's cause of action, if any, accrued under the above circumstances.

■ Of course, the question of when limitations run in a diversity case is a matter which is controlled by state rather than federal law.[1]

The statute of limitations in legal and other types of professional malpractice actions is prescribed by KRS 413.245, which provides:

> "Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, ... a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured...."

This statute was adopted in 1980, and embodies the "discovery rule" previously adopted by judicial fiat.[2]

Even where the discovery rule is not in issue, there is a conflict of authority as to when a cause of action for legal malpractice begins to run. Some courts hold that the cause of action accrues at the time of the negligent act. Others hold that such an action accrues from the time the client has sustained damages. Another view is that the statute begins to run at the time of the termination of the attorney's contract.[3]

To aid us in interpreting the statute, it is well to consider Kentucky law prior to its adoption. It was held in one case that a cause of action for medical malpractice accrued at the time of the injury, even though it was impossible for the plaintiff to

1. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 745–46, 100 S.Ct. 1978, 1982–83, 64 L.Ed.2d 659 (1980).

2. *Tomlinson v. Siehl,* 459 S.W.2d 166 (Ky.1970).

3. 7 *Am.Jur.*2d, Attorneys at Law § 221; *Anno.* 18 A.L.R.3d 978.

have discovered the injury or defendant's negligence.[4]

The Kentucky courts have consistently followed the view that a cause of action does not accrue until damage occurs. Thus, it was stated in an early case,

"It is a juncture of wrong and damage that gives rise to a cause of action...."[5]

And as has been well stated by Judge Reed of our court, when he was a judge of Kentucky's highest court:

"The right of action for negligence ... requires more than mere conduct before recovery can be attempted. Recovery is not possible until a cause of action exists. A cause of action does not exist until the conduct causes injury that produces loss or damage."[6]

This court finds particularly persuasive in determining the view of the Kentucky courts as to the events triggering the accrual of a cause of action for legal malpractice the decision of the Kentucky Court of Appeals in *Mitchell v. Transamerica Ins. Co.*[7] There, the defendant attorney was retained to file a personal injury action arising out of an automobile accident. He negligently permitted the one-year Kentucky statute of limitations to expire without filing suit. However, the clients were later able to sue in Indiana, which had a longer statute of limitations, and settled their action in the Indiana court for $60,-000.

The Kentucky Court of Appeals held that the clients had no cause of action against the attorney, stating,

"Having said all of this, however, this court cannot see where the Mitchells proved their damages. The Delaware Supreme Court stated the problem here thusly:

'We may assume malpractice on the part of the defendants *but every malpractice action does not carry with it*

*a right to monetary judgment. It is the law that a malpractice action against an attorney cannot be established in the absence of a showing that his wrongful conduct has deprived his client of something to which he would otherwise have been entitled.* (citation omitted)'

"The Mitchells argue that they could have received more damages if the case had been tried in Kentucky. However, the evidence, in our opinion, on this point is a matter of conjecture and speculation."[8] (emphasis added).

*Mitchell*, when read in conjunction with the above statute and authorities, makes it clear that the present law of Kentucky requires the following three elements for the accrual of a cause of action for legal malpractice: (1) a negligent act or omission on the part of the attorney; (2) the occurrence of damage that is not merely speculative as a proximate result of such act or omission; (3) discovery of the negligence and damage by the client. The addition of the prerequisite of the discovery factor by the statute did not negate the *sine qua non* of damage.

The defendant argues that by the use of the word "occurrence" the statute intends to adopt the rule that limitations run from the time of the negligent act. However, this court believes that the drafters of the statute equated the word "occurrence" with the term "cause of action," as used later in the same sentence. Otherwise, the statute would be unintelligible, because a cause of action cannot be discovered until it exists. Therefore, if defendant's interpretation were accepted the word "occurrence" would be meaningless.

The use of the term "cause of action" indicates that the intent of the statute was

---

4. *Carter v. Harlan Hospital Ass'n.*, 265 Ky. 452, 97 S.W.2d 9 (1936) (physician left forceps in plaintiff's abdomen).

5. *Dodd v. Pittsburg, C.C. & St. L.R. Co.*, 127 Ky. 762, 106 S.W. 787, 794 (1908). *See also Caudill v. Arnett*, 481 S.W.2d 668 (Ky.1972); *Jordan v. Howard*, 246 Ky. 142, 54 S.W.2d 613 (1932).

6. *Saylor v. Hall*, 497 S.W.2d 218, 225 (1973).

7. 551 S.W.2d 586 (Ky.App.1977).

8. *Mitchell, supra* at 588.

not to dispense with the previously existing law requiring damage for accrual of a cause of action for malpractice, just as for any other cause of action.[9]

 This court concludes that the Kentucky courts would agree with the views expressed in *Budd v. Nixen*.[10]

"If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort.... The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence.... Hence, until the client suffers *appreciable harm* as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. Prosser states the proposition succinctly, 'It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred....' "[11] (emphasis added).

 The occurrence of appreciable harm sufficient to commence the running of the statute of limitations is a question of fact.[12] However, where, as here, there is no dispute concerning the material facts, it becomes a question of law for the court.[13]

Although not a malpractice action, the very recent decision of the Court of Appeals of Kentucky in *Commonwealth, Department of Housing, Buildings & Construction v. Collins*,[14] also sheds light on the issue under consideration. There, the Commonwealth's plumbing inspector negligently placed a stop work order on the construction of the plaintiff's house, because of plaintiff's failure to comply with the state plumbing code. The problem was that plaintiff was not subject to the plumb-ing code because his house was located in a rural area. Plaintiff was criminally prosecuted and convicted for violating the plumbing code. However, the conviction was set aside upon its being pointed out to the state court that the plumbing code was not applicable. Plaintiff subsequently filed a claim in the Board of Claims for the state's negligence. If the statute of limitations ran from the time of the entry of the stop work order, the action would have been barred. However, it would have been timely if the plaintiff's cause of action accrued only at the time the criminal conviction was overturned. The Board of Claims held that the cause of action arose only at the later date, and the state circuit court and the Kentucky Court of Appeals affirmed. The latter court stated that "limitations never run while acts which commence the statutory period continue to run."[15]

Inasmuch as there is no contention that Northwestern was not aware of any negligence on the part of Osborne shortly after it occurred, in the light of the above authorities our inquiry in this case narrows down to the single issue: when in this somewhat unusual series of events did Northwestern sustain appreciable harm, that is, damage which was more than merely speculative?

 Osborne argues that such damage was sustained on March 5, 1981, at the time the trial court entered the order of default, stating that it was going to enter a default judgment upon the holding of a damages hearing. Osborne argues that at this time the insurance company began to incur extra legal expenses, which should be considered as damages, which commenced

---

9. *Ameraccount, Inc. v. Hill*, 617 S.W.2d 876 (Tenn.1981); *Woodruff v. Tomlin*, 511 F.2d 1019 (6th Cir.1975) (Tenn. law).

10. 6 Cal.3d 195, 98 Cal.Rptr. 849, 852, 491 P.2d 433, 436 (1971).

11. *Id.*

12. *Brown v. Babcock*, 273 Or. 351, 540 P.2d 1402 (1975).

13. *Hall v. Musgrave*, 517 F.2d 1163 (6th Cir. 1975); *Lynn Mining Co. v. Kelly*, 394 S.W.2d 755, 759 (Ky.1965).

14. 654 S.W.2d 608 (Ky.App.1983).

15. 654 S.W.2d at 611.

the running of the statute. There is some authority in support of this view.[16] However, this court holds that at the time of the default order, the incidence of any damages to Northwestern was purely speculative. That order was interlocutory. Under Northwestern's theory of this case, services rendered by Osborne to set the order aside, since they were caused by his own alleged negligence, could not have legally been charged to Northwestern.

For all that anyone knew at the time of the default order, the trial court might have relented without any damage to Northwestern at all. If it had filed suit at that time, Osborne could have successfully moved to dismiss on the authority of *Mitchell v. Transamerica Ins. Co., supra,* on the ground that at that point damages were purely speculative.

▮▮▮ There is no doubt in the mind of this court that, if the trial court had proceeded to hold the damages hearing and entered judgment thereon, Northwestern would have sustained appreciable harm at that time. It would have had a judgment in a fixed amount against it, which it would have either had to pay or supersede.[17] However, this did not occur. What did occur is that the Kentucky Court of Appeals, whether inadvertently or otherwise, permitted an appeal to be taken from an interlocutory order.[18] Its affirmance of the trial court and the denial of discretionary review by the Supreme Court of Kentucky did not change the interlocutory character of that order in the opinion of this court. Under Kentucky procedure, even after remand, the trial court could have set the default aside, had it been so disposed, up to the time of the settlement. Therefore, under the doctrine of *Mitchell, supra,* the damage remained speculative, or in the language of *Collins, supra,* the acts which commenced the statutory period continued to run until Northwestern settled or perhaps until the new attorney was substituted for Osborne. It is unnecessary for this court to choose between these events as commencing the running of the statute of limitations, because, whichever choice is made, this action is timely filed.

Defendant relies on *Caudill v. Arnett,*[19] for the proposition that the statute will begin to run, even though the plaintiff does not realize the full extent of his damages. This case does not avail the defendant. It involved a plaintiff who was run over by a school bus. A legal malpractice action differs from such a case in that a subsequent ruling by a trial or appellate court can retroactively change the consequences of the attorney's negligence, removing any damage after the fact. In a legal malpractice action, until some irremediable damage occurs, the occurrence of any damages remains speculative.

This court will remark that, although it believes that the conclusion that this action is timely filed is dictated by the Kentucky cases and it has no discretion in ruling as herein indicated, these cases do embody the most salutary rule. If the rule were as contended by Osborne that the statute began to run upon the negligent occurrence, all manner of unnecessary legal malpractice actions would have to be filed.

For, frequently an attorney will be in default in filing an answer, a reply to a cross-claim or counterclaim or in some oth-

---

**16.** See *Jones v. Gregory,* 125 Wash. 46, 215 P. 63 (1923); *Royal Crown Cola Bottling Co., etc. v. Bond,* 438 F.Supp. 39 (E.D.Okl.1977) (failure to plead statute of limitations). *Anno.* 18 A.L.R.3d 978, 996.

**17.** Ky.C.R. 73.04.

**18.** Where an order is by its very nature interlocutory, even the inclusion of the recitals provided for in Ky.C.R. 54.02 will not make it appealable. *Hook v. Hook,* 563 S.W.2d 716 (Ky.1978); 7 Clay, *Kentucky Practice,* Rule 54.02, Comment 5

(1981 Supp.), citing *Hale v. Deaton,* 528 S.W.2d 719 (Ky.1975). *See also, State Automobile Ins. Co. v. Outlaw,* 575 S.W.2d 489 (Ky.App.1978). It is probable that the Kentucky Court of Appeals had no jurisdiction of this appeal, since Ky.C.R. 54.02 "is confined to actions involving multiple claims or multiple parties." Unless this Rule is applicable only final orders are appealable under Kentucky Procedure. *Hook v. Hook, supra.*

**19.** 481 S.W.2d 668 (1972).

er matter, and his misfeasance or malfeasance will not result in any action to procure a default for longer than the relatively brief statutory period. Sometimes a motion for the default or other sanction will pend itself for a substantial period of time, even for as long as the statutory period. At other times the same or another trial judge, or an appellate court, will find mercy in its theretofore flinty heart and let the attorney off the hook. In the instant case, for example, if Osborne's theory were accepted, Northwestern would have had to sue while the *Deitsch* appeal was pending, since that case was on appeal for some fifteen months, a not uncommon situation.

This court believes that the rule dictated by the Kentucky authorities satisfies the need to have a definitely ascertainable time when the statute begins to run in cases where an attorney's negligence might lead to a judgment against his client.

Happily, this court, having had sufficient difficulty coping with the issue before it, need not address at this time when the Kentucky statute begins to run with regard to negligence by an attorney in *prosecuting* a client's cause of action under circumstances similar to that existing in *Mitchell, supra.*[20] Nor, need it decide what the result would be had Northwestern discharged Osborne at the time of the entry of the default and substituted another attorney at that time to seek to have the default set aside.

For the reasons stated above, defendant's motion to dismiss must be denied and plaintiff's motion to strike granted.

IT IS SO ORDERED.

---

**20.** In such a case the United States Court of Appeals for the Sixth Circuit, applying Tennessee law, has held that damage does not accrue until all appeals have been exhausted. *Woodruff v. Tomlin,* 511 F.2d 1019 (6th Cir.1975).